**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| AHMED AL DARBY,<br>    Detainee, Guantánamo Bay Naval Station,<br>    Guantánamo Bay, Cuba; and<br><br>MOHAMMED MOHAMMED HASSEN,<br>    Detainee, Guantánamo Bay Naval Station,<br>    Guantánamo Bay, Cuba<br>    as the Next Friend of Ahmed al Darby<br><br>                              *Petitioners,*<br><br>               v.<br><br>GEORGE W. BUSH,<br>    President of the United States<br>    The White House<br>    1600 Pennsylvania Avenue, NW<br>    Washington, D.C. 20500<br><br>DONALD H. RUMSFELD,<br>    Secretary, United States Department of Defense<br>    1000 Defense Pentagon<br>    Washington, D.C. 20301-1000<br><br>ARMY BRIGADIER GENERAL JAY W. HOOD,<br>    Commander, Joint Task Force – GTMO<br>    JTF – GTMO<br>    c/o United States Army<br>    Army Pentagon<br>    Washington, DC 20310-0200<br><br>ARMY COLONEL MICHAEL BUMGARNER,<br>    Commander, Joint Detention Operations Group<br>    JTF – GTMO<br>    c/o United States Army<br>    Army Pentagon<br>    Washington, DC 20310-0200<br><br>                              *Respondents.* | **PETITION FOR<br>WRIT OF HABEAS CORPUS**<br><br><br>No.:_____ |

## PETITION FOR WRIT OF HABEAS CORPUS

Petitioner Ahmed al Darby ("al Darby")[1] seeks the Great Writ. A citizen of Saudi Arabia, Petitioner al Darby acts on his own behalf and through his Next Friend, Mohammed Mohammed Hassen. Petitioner al Darby is a civilian wrongly classified as an "enemy combatant" by the President of the United States, and is being held virtually *incommunicado* in military custody at the United States Naval Station in Guantánamo Bay, Cuba ("Guantánamo"). His detention is without lawful basis, without charge, and without access to counsel or any fair process by which he might challenge his detention. Petitioner is being held under color and authority of the Executive, in violation of the Constitution, laws, and treaties of the United States, in violation of the fundamental due process principles of the common law, and in violation of customary international law. Accordingly, this Court should issue a Writ of Habeas Corpus compelling Respondents either to release Petitioner al Darby or to establish in this Court a lawful basis for Petitioner al Darby's detention. This Court should also order injunctive and declaratory relief.

## I.    JURISDICTION

1.    Petitioners bring this action under 28 U.S.C. §§ 2241(a), (c)(1) and (c)(3), and 2242. Petitioners further invoke this Court's jurisdiction under 28 U.S.C. §§ 1331, 1350, 1651, 2201, and 2202; 5 U.S.C. § 702; Articles I and II of, and the Fifth and Sixth Amendments to the United States Constitution. Because they seek declaratory relief, Petitioners also rely upon Fed. R. Civ. P. 57.

---

[1]    Upon information and belief, due to variances in transliteration, Petitioner al Darby's name may also be officially recorded as Ahmad Aderbi, Ahmad Mohammed Ahmad Addarbi, and/or Ahmad Mohammed Ahmad Al Derby.

2.     This Court is empowered to declare the rights and other legal relations of the parties in this matter by 28 U.S.C. § 2201, and to effectuate and enforce declaratory relief by all necessary and proper means by 28 U.S.C. § 2202, as this case involves an actual controversy within the Court's jurisdiction, and to issue all writs necessary or appropriate in aid of its jurisdiction by 28 U.S.C. § 1651.

## II.    PARTIES

3.     Petitioner Ahmed al Darby is a citizen of the Kingdom of Saudi Arabia who is presently incarcerated and held in Respondents' unlawful custody and control at Guantánamo. Upon information and belief, Petitioner al Darby desires undersigned counsel to file this petition on his behalf. *See* Exhibit A to Declaration of Marc D. Falkoff, Esq. ("Falkoff Decl.") (attached hereto).

4.     Petitioner Mohammed Mohammed Hassen is also a detainee at Guantánamo, who has been familiar with Petitioner al Darby for the duration of their incarceration. *See* Falkoff Decl. at ¶¶ 3-4. Petitioner Hassen is a citizen of Yemen. *Id*. at ¶ 3. He acts as the Next Friend to Petitioner al Darby because Petitioner al Darby has been denied access to legal counsel and to the courts of the United States. *Id*. at ¶¶ 5 and Ex. A. Petitioner Hassen acts as Next Friend in order to assist Petitioner al Darby in seeking redress for these grievances. *Id*.

5.     Respondent George W. Bush is the President of the United States and Commander-in-Chief of the United States Military. Petitioner al Darby is being detained pursuant to Respondent Bush's authority as Commander-in-Chief, under the laws and usages of war or, alternatively, pursuant to the Military Order of November 13, 2001, Detention, Treatment, and Trial of Certain Non-Citizens in the War Against Terrorism, 66 Fed. Reg. 57,833 ("Military Order"). Respondent Bush is responsible for Petitioner al Darby's unlawful detention and is sued in his official capacity.

3

6.      Respondent Donald H. Rumsfeld is the Secretary of the United States Department of Defense. Respondent Rumsfeld has been charged with maintaining the custody and control of Petitioner al Darby, pursuant to the President's authority as Commander-in-Chief, his authority under the laws and usages of war or, alternatively, pursuant to the Military Order. Respondent Rumsfeld is responsible for Petitioner al Darby's custody and control and is sued in his official capacity.

7.      Respondent Brigadier General Jay W. Hood is the Commander of Joint Task Force-GTMO, the task force running the detention operation at Guantánamo Bay. Respondent Hood has supervisory responsibility for Petitioner al Darby and is sued in his official capacity.

8.      Respondent Army Colonel Michael Bumgarner is the Commander of the Joint Detention Operations Group and the JTF-GTMO detention camps, including the United States military facility where Petitioner al Darby is presently held. Respondent Bumgarner is the immediate custodian responsible for Petitioner al Darby's detention and is sued in his official capacity.

9.      Respondents are directly responsible, individually and collectively, for any activities undertaken by or under the supervision of any agents or employees acting on their behalf, or of agents or employees of private contractors ("contractor employees") with whom any agency under Respondents' authority or supervision has contracted for the provision of services at Guantanamo. All references to Respondents' actions in this Petition include activities performed by Respondents' agents or employees, other government agents or employees or contractor employees.

## III.    STATEMENT OF FACTS

10.     Under the unique and extraordinary circumstances of this case, the factual allegations made "upon information and belief" in the following paragraphs are made pursuant to

4

Rule 11(b)(3) of the Federal Rules of Civil Procedure, on the basis that those allegations "are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(3).

11.     Upon information and belief, Petitioner al Darby desires undersigned counsel to file this petition on his behalf.  Specifically, Petitioner al Darby seeks to enforce his right to a judicial determination by an appropriate and lawful authority as to whether there is a lawful and factual basis for Respondents' determination that he is either an "enemy combatant" as defined by the United States Supreme Court in *Hamdi v. Rumsfeld*, 542 U.S. 507, 516, 124 S. Ct. 2633, 2639 (2004) (plurality), or an "enemy combatant" as that term is defined and used by the Executive in the Combatant Status Review Tribunals.

12.     Upon information and belief, Petitioner al Darby is not, nor has he ever been, an enemy alien, lawful or unlawful belligerent, or combatant of any kind under any definition adopted by the government in any civil or military proceeding.

13.     Upon information and belief, Petitioner al Darby is not, nor has he ever been an "enemy combatant" who was "part of or supporting forces hostile to the United States or coalition partners in Afghanistan and who engaged in an armed conflict against the United States there." *Hamdi*, 542 U.S. at 516, 124 S. Ct. at 2639 (internal quotations omitted).

14.     Upon information and belief, Petitioner al Darby was not a member of the Taliban's armed forces or Al Qaeda at the time of his seizure and detention.  Prior to his detention, Petitioner al Darby did not commit any violent act against any American person or property.  He had no involvement, direct or indirect, in the terrorist attacks on the United States on September 11, 2001, the ensuing international armed conflict, or any act of international terrorism attributed by the United States to Al Qaeda.  Petitioner al Darby remains incarcerated

5

at the United States Naval base at Guantánamo, Cuba, a territory over which the United States exercises exclusive jurisdiction and control.

15.    Respondents have not afforded Petitioner al Darby any procedures that would satisfy his rights under the most fundamental common law notions of due process, the United States Constitution, the laws and treaties of the United States, or customary international law.

16.    Upon information and belief, Petitioner al Darby desires to pursue in United States courts every available legal challenge to the lawfulness of his detention.

### A.    The Joint Resolution

17.    In the wake of the September 11, 2001 attacks on the United States, the United States, at the direction of Respondent Bush, began a massive military campaign against the Taliban government, then in power in Afghanistan.  On September 18, 2001, a Joint Resolution of Congress authorized Respondent Bush to use force against the "nations, organizations or persons who planned, authorized, committed or aided the terrorist attacks that occurred on September 11, 2001, or harbored such persons or organizations." Joint Resolution, Authorization for Use of Military Force, Pub. L. 107-40, 115 Stat. 224 (Sep. 18, 2001) ("Joint Resolution").

18.    Upon information and belief, Petitioner al Darby is neither properly detained pursuant to President Bush's authority as Commander-in-Chief nor under the laws and usages of war or the Joint Resolution because Petitioner al Darby did not participate in the armed conflict at any point in time.

### B.    The Military Order

19.    On November 13, 2001, Respondent Bush issued a Military Order authorizing Respondent Rumsfeld to detain indefinitely anyone Respondent Bush has "reason to believe":

(i)    is or was a member of the organization known as al Qaeda;

6

(ii) has engaged in, aided or abetted, or conspired to commit, acts of international terrorism, or acts in preparation therefor, that have caused, threaten to cause, or have as their aim to cause, injury to or adverse effects on the United States, its citizens, national security, foreign policy, or economy; or

(iii) has knowingly harbored one or more individuals described in subparagraphs (i) or (ii) . . .

*See* Military Order at § 2(a). Respondent Bush must make such determination "in writing." *Id.* The Military Order was neither authorized nor directed by Congress.

20.    The Military Order purports to vest Respondent Bush with sole discretion to determine which individuals fall within its purview. It establishes no standards governing the exercise of this discretion. There is no requirement that a person detained under the Military Order be notified of the charges he may face, nor of his rights under domestic and international law. The Military Order provides a detainee with no right to counsel, no rights to notice of consular protection or to consular access at the detainee's request, and no right to appear before a neutral tribunal to review the basis for or the legality a detainee's continued detention. There are no guidelines for or restrictions placed upon the length of time a detainee may be held subject to the Military Order. Furthermore, the Military Order expressly bars review by any court.

21.    The Military Order was promulgated in the United States and in this judicial district. Upon information and belief, the decisions to incarcerate Petitioner al Darby pursuant to the Military Order, to detain Petitioner al Darby at Guantánamo, and to subject Petitioner al Darby to ongoing detention of an indeterminate duration, were and are being made by Respondents in the United States and in this judicial district.

22.    Upon information and belief, Respondent Bush has never certified or determined in any manner, in writing or otherwise, that Petitioner al Darby is subject to the Military Order.

23.    Upon information and belief, Petitioner al Darby is not properly subject to the Military Order.

**C.    Guantánamo Bay Naval Station**

24.    On or about January 11, 2002, the United States military began transporting prisoners captured in Afghanistan to Camp X-Ray at the United States Naval Base in Guantánamo Bay, Cuba. In April 2002, prisoners were transferred to Camp Delta, a more permanent prison facility at Guantánamo. Currently, some prisoners are housed in Camp Delta and Camp Five, an additional maximum-security interrogation and detention center.

25.    Prisoners incarcerated at Guantánamo are entitled to test the legality of their detention in the federal courts. *See Rasul v. Bush*, 542 U.S. 466, 483, 124 S. Ct. 2686, 2698 (2004).

26.    On a date unknown to counsel, but known to Respondents, the United States military transferred Petitioner al Darby to Guantánamo. Upon information and belief, Petitioner al Darby has been held at Guantánamo since that date, in the custody and control of Respondents.

**D.    The Conditions of Detention at Guantánamo**

27.    Upon information and belief, since gaining control of Petitioner al Darby, the United States military has held him virtually *incommunicado*.

28.    Upon information and belief, Petitioner al Darby has been or will be interrogated repeatedly by agents of the United States Departments of Defense and Justice, and the Central Intelligence Agency, although he has not been charged with an offense and has not been notified of any pending or contemplated charges. Petitioner al Darby has not appeared before a lawful military or civilian tribunal, and has not been provided access to counsel or the means to contact and secure counsel. He has not been adequately informed of his rights under the United States

Constitution, the regulations of the United States Military, the Geneva Convention, the International Covenant on Civil and Political Rights, the American Declaration on the Rights and Duties of Man, the 1954 Convention Relating to the Status of Refugees or customary international law. Indeed, Respondents have taken the position that Petitioner al Darby should not be informed of these rights. As a result, Petitioner al Darby lacks any ability to protect or to vindicate his rights under domestic and international law.

29.     Upon information and belief, Petitioner al Darby may have been forced to provide involuntary statements to Respondents' agents at Guantánamo.

30.     Upon information and belief, Petitioner al Darby has been held under conditions that violate his constitutional and international rights to dignity and freedom from torture and from cruel, inhuman and degrading treatment or punishment. *See, e.g.,* Amnesty Int'l, *USA: Guantánamo and beyond: The continuing pursuit of unchecked executive power*, at 83-115, Ch. 12-13, AMR 51/063/2005 (May 13, 2005), *available at* http://web.amnesty.org/library/index/ engamr510632005; Physicians for Human Rights, *Break Them Down: Systematic Use of Psychological Torture by US Forces*, Ch. 3 (May 2005), *available at* http://www.phrusa.org/ research/torture/pdf/psych_torture.pdf; Operational Update, International Committee of the Red Cross ("ICRC"), *US detention related to the events of 11 September, 2001 and its aftermath - the role of the ICRC* (Apr. 30, 2005), *available at* http://www.icrc.org/Web/Eng/sieeng0.nsf/html; Press Release, United Nations, *United Nations Human Rights Experts Express Continued Concern About Situation of Guantánamo Bay Detainees* (Feb. 4, 2005), *available at* http://www.ohchr.org/english/bodies/chr/special; Press Release, ICRC, *The ICRC's work at Guantánamo Bay* (Nov. 30, 2004), *available at* http://www.icrc.org/Web/Eng/steeng0.nsf/ html/678FK8; Amnesty Int'l, *USA: Human dignity denied: Torture and accountability in the*

9

*'war on terror,'* at 22, AMR 51/145/2004 (Oct. 27, 2004), *available at* http://web.amnesty.org/library/index/engamr51452004.

31.     Indeed, many of these violations – including isolation for up to 30 days, 20-hour interrogations, extreme and prolonged stress positions, sleep deprivation, sensory assaults, forced nudity and humiliation, hooding, and the use of dogs to create anxiety and terror – were interrogation techniques expressly approved for use at Guantánamo by Respondent Rumsfeld. *See e.g.*, Action Memo from William J. Haynes II, General Counsel, DOD, to Secretary of Defense (Nov. 27, 2002) (approved by Defense Secretary Donald H. Rumsfeld on Dec. 2, 2002), *available at* http://www.washingtonpost.com/wp-srv/nation/documents/dodmemos.pdf; *Pentagon Working Group Report on Detainee Interrogations in the Global War on Terrorism: Assessment of Legal, Historical, Policy and Operational Considerations*, at 62-65 (Apr. 4, 2003), *available at* http://www.washingtonpost.com/wp-srv/nation/documents/040403dod.pdf.[2]

32.     In a confidential report to the United States government, the International Committee of the Red Cross ("ICRC") charged the United States military with intentional use during interrogations of psychological and physical coercion on prisoners at Guantánamo that is "tantamount to torture." *See* Neil A. Lewis, *Red Cross Finds Detainee Abuse in Guantánamo*, N.Y. Times, Nov. 30, 2004, at A1. The report includes claims that doctors and other medical workers at Guantánamo participated in planning for interrogations. *Id.*; *see also* M. Gregg

---

[2]     Additional details of the cruel and degrading conditions suffered by detainees at Guantánamo are set out at length in a statement by numerous released British detainees. *See* Shafiq Rasul, Asif Iqbal & Rhuhel Ahmed, *Composite Statement: Detention in Afghanistan and Guantanamo Bay* (July 26, 2004) *available at* http://www.ccr-ny.org/v2/reports/docs/Gitmo-compositestatementFINAL23july04.pdf). The Department of Defense also informed the Associated Press that a number of interrogators at Guantánamo have been demoted or reprimanded after investigations into accusations of abuse at the facility. *See* Paisley Dodds, *Report Details Guantanamo Abuses*, Assoc. Press, Nov. 4, 2004.

Bloche and Jonathan H. Marks, *When Doctors Go to War*, New Eng. J. Med., Jan. 6, 2005, at 3-4.

33.    Since details of the ICRC's report emerged, new revelations of abuse and torture at Guantánamo have appeared, including FBI memos detailing torture and "highly aggressive interrogation techniques" including 24-plus hour interrogations involving beatings, temperature extremes, dogs, prolonged isolation, and loud music. *See, e.g.,* Carol D. Leonnig, *Guantánamo Detainee Says Beating Injured Spine; Now in Wheelchair, Egyptian-Born Teacher Objects to Plan to Send Him to Native Land,* Wash. Post, Aug. 13, 2005, at A18; Amnesty Int'l, *Guantánamo and Beyond,* at 83-115, Ch. 12-13; Amnesty Int'l, *USA: Guantánamo: an icon of lawlessness,* at 3-5, AMR 51/002/2005 (Jan. 6, 2005) *available at* http://web.amnesty.org/library/index/engamr510022005; Neil A. Lewis, *Fresh Details Emerge on Harsh Methods at Guantánamo,* N.Y. Times, Jan. 1, 2005, at A11; Carol D. Leonnig, *Further Detainee Abuse Alleged; Guantánamo Prison Cited in FBI Memos,* Wash. Post, Dec. 26, 2004, at A1; Neil A. Lewis and David Johnston, *New F.B.I. Files Describe Abuses of Iraq Inmates,* N.Y. Times, Dec. 21, 2004, at A1; Dan Eggen and R. Jeffrey Smith, *FBI Agents Allege Abuse of Detainees at Guantánamo Bay,* Wash. Post, Dec. 21, 2004, at A1; Neil A. Lewis, *F.B.I. Memos Criticized Practices at Guantánamo,* N.Y. Times, Dec. 7, 2004, at A19.

34.    In fact, many of the egregious interrogation techniques used in the Abu Ghraib detention center and other detention facilities in Iraq—such as the use of aggressive dogs to intimidate detainees, sexual humiliation, stress positions, and sensory deprivation—were pioneered at Guantánamo for use on post-September 11, 2001 detainees. *See* Josh White, *Abu Ghraib Dog Tactics Came From Guantanamo; Testimony Further Links Procedures at 2*

*Facilities*, Wash. Post, July 27, 2005, at A14; Josh White, *Abu Ghraib Tactics Were First Used at Guantanamo*, Wash. Post, July 14, 2005 at A1.

35.     Upon information and belief, the unlawful interrogation techniques used by Respondents at Guantánamo include not only direct physical and psychological abuse but also impermissible conduct intended to undermine the detainees' due process rights, such as representing to detainees that government agents are their habeas lawyers for the express purpose of extracting information from the detainees. *See* Sam Hannel, *Lawyers Describe Guantánamo Detainees*, Seattle Post-Intelligencer, Jan. 19, 2005.

36.     Respondents, acting individually or through their agents, have stated that the humanitarian limitations which normally apply to the United States military's use of coercive interrogation techniques under the auspices of the Department of Defense *do not apply* to interrogations conducted by CIA agents or other specially-designated government officers assigned to such work. *See* Amnesty Int'l, *Guantánamo and Beyond*, at 27-43, Ch. 5; Eric Lichtblau, *Gonzales Says Humane-Policy Order Doesn't Bind CIA*, N.Y. Times, Jan. 19, 2005, at A17.

37.     In published statements, Respondents Bush and Rumsfeld, and the predecessors of Respondents Hood and Bumgarner, Michael Lenhert and Terry Carrico, respectively, have proclaimed that the United States may hold the detainees under their current conditions indefinitely. *See, e.g.,* Roland Watson, *British team to question Cuba detainees*, The Times (London), Jan. 18, 2002 ("Donald Rumsfeld, the US Defence Secretary, suggested last night that Al-Qaeda prisoners could be held indefinitely at the base.  He said that the detention of some would be open-ended as the United States tried to build a case against them."); Lynne Sladky, *Treatment of detainees at Guantanamo getting more scrutiny*, Assoc. Press, Jan. 22, 2002

("Marine Brig. Gen. Mike Lehnert, who is in charge of the detention mission, defended the temporary cells where detainees are being held . . . 'We have to look at Camp X-ray as a work in progress […]' Lehnert told CNN.  Lehnert said plans are to build a more permanent prison 'exactly in accordance with federal prison standards.'"); John Mintz, *Extended Detention in Cuba Mulled*, Wash. Post, Feb. 13, 2002 ("As the Bush Administration nears completion of new rules for conducting military trials of foreign detainees, U.S. officials say they envision the naval base at Guantanamo Bay, Cuba, as a site for the tribunals and as a terrorist penal colony for many years to come.").

38.    According to the Department of Defense, detainees who are adjudged innocent of all charges by a military commission may nevertheless be kept in detention at Guantanamo indefinitely.  *See* Dep't of Defense, Background Briefing on Military Commissions (July 3, 2003), *available at* http://www.defenselink.mil/transcripts/2003/tr20030703-0323.html; *see also* Dana Priest, *Long-Term Plan Sought for Terror Suspects*, Wash. Post, Jan. 2, 2005, at A1.

39.    Counsel for Respondents has also consistently maintained that the United States may indefinitely hold detainees such as Petitioner al Darby.  *In re Guantánamo Detainee Cases*, Nos. 02-CV-0299 (CKK), *et al.*, (D.D.C.), Tr. of Dec. 1, 2004 Oral Argument on Mot. to Dismiss at 22-24 (Statements by Principle Deputy Associate Attorney Gen. Brian Boyle).

40.    In fact, Respondents have failed to release a number of Guantánamo detainees even after determining that the detainees are "No Longer Enemy Combatants," or "NLEC's." *See* Robin Wright, *Chinese Detainees Are Men Without a Country; 15 Muslims, Cleared of Terrorism Charges, Remain at Guantanamo With Nowhere to Go*, Wash. Post, Aug. 24, 2005, at A1 (Final Ed.); Ben Fox, *U.S. to ease conditions for some detainees*, Chicago Trib., Aug. 11, 2005, at C4.

41.     The United States government has acknowledged its plan to begin constructing a new, more permanent detention facility at Guantánamo. Christopher Cooper, *Detention Plan: In Guantánamo, Prisoners Languish in a Sea of Red Tape*, Wall St. J., Jan. 26, 2005, at A1; Paisley Dodds, *Guantánamo Takes on the Look of Permanence*, Assoc. Press, Jan. 9, 2005.

**E.     Rendition**

42.     During interrogations, upon information and belief, detainees at Guantánamo have been threatened with rendition or transfer to countries where they may be imprisoned indefinitely, tortured and denied access to the courts.

43.     Upon information and belief, the United States has secretly transferred detainees to such countries without complying with the applicable legal requirements for extradition. This practice, known as "extraordinary rendition," is used to facilitate interrogation by subjecting detainees to torture. *See* Jane Mayer, *Outsourcing Torture: The secret history of America's "extraordinary rendition" program*, The New Yorker, Feb. 14, 2005, at 106.

44.     The United States government's "extraordinary rendition" program has been well documented by key American and international news organizations, including the *Washington Post*, *The Los Angeles Times*, and the British Broadcasting Corporation (the "BBC"). According to news accounts:

> Since September 11, the U.S. government has secretly transported dozens of people suspected of links to terrorists to countries other than the United States, bypassing extradition procedures and legal formalities, according to Western diplomats and intelligence sources. The suspects have been taken to countries . . . whose intelligence services have close ties to the CIA and where they can be subjected to interrogation tactics – including torture and threats to families – that are illegal in the United States, the sources said. In some cases, U.S. intelligence agents remain closely involved in the interrogations, the sources said.

14

Rajiv Chandrasekaran & Peter Finn, *U.S. Behind Secret Transfer of Terror Suspects*, Wash. Post, Mar. 11, 2002, at A1; *see also* Dana Priest, *Long Term Plan Sought for Terror Suspects*, Wash. Post, Jan. 2, 2005, at A1 ("The transfers, called 'renditions,' depend on arrangements between the United States and other countries, such as Egypt, Jordan and Afghanistan, that agree to have local security services hold certain suspects in their facilities for interrogation by CIA and foreign liaison officers.").

45.    In fact, the United States government has recently announced its intention to render many Guantánamo detainees to countries which have a documented record of human rights violations, including state-sponsored torture. *See, e.g.,* Matthew Waxman, *Beyond Guantánamo*, Wash. Post, Aug. 20, 2005, at A17; Neil A. Lewis, *Guantánamo Detention Site Is Being Transformed, U.S. Says*, N.Y. Times, Aug. 6, 2005, at A8; Paul Richter, *U.S. to Repatriate 110 Afghans Jailed at Guantánamo Bay*, L.A. Times, Aug. 5, 2005, at A18.

46.    In a report released on February 28, 2005, the United States Department of State found that the human rights record of the Saudi government "remained poor overall with continuing serious problems . . . Security forces continued to abuse detainees and prisoners, arbitrarily arrest, and hold persons in incommunicado detention." Dep't of State, *Country Reports on Human Rights Practices 2004: Saudi Arabia* (Feb. 28, 2005), *available at* http://www.state.gov/g/drl/rls/hrrpt/2004/41731.htm. Specifically, the Department of State found that Saudi authorities:

> reportedly at times abused detainees, both citizens and foreigners.
> Ministry of Interior officials were responsible for most incidents of
> abuse of prisoners, including beatings, whippings, and sleep
> deprivation. In addition, there were allegations of beatings with
> sticks and suspension from bars by handcuffs. There were
> allegations that these practices were used to force confessions from
> prisoners.

*Id.* at § 1(c). In a report released in August 2005, the State Department further concluded that "the United States remains concerned about human rights conditions in Saudi Arabia. Principal human rights problems include abuse of prisoners and incommunicado detention . . ." Dep't of State, Bureau of Near Eastern Affairs, Background Note: Saudi Arabia (Aug. 2005), *available at* http://www.state.gov/r/pa/ei/bgn/3584.htm.

47.     Recent news reports indicate that the United States government is contemplating transferring a large number of Saudi detainees very soon. Maha Akeel, *40 Saudis Likely to Be Freed from Guantanamo Soon*, Arab News, Nov. 7, 2005; *see also* Dana Priest, *Long-Term Plan Sought for Terror Suspects*, Wash. Post, Jan. 2, 2005, at A1 (noting that United States government is contemplating transfer of "large numbers of Afghan, Saudi and Yemeni detainees from the military's Guantánamo Bay, Cuba detention center into new U.S.-built prisons in their home countries.").

48.     Upon information and belief, Petitioner al Darby may be at risk of being rendered, returned or transferred without lawful process to a country that permits indefinite detention without process and/or engages in torture or abuse during interrogation.

## IV.     CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF
### (COMMON LAW DUE PROCESS AND DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES – UNLAWFUL DEPRIVATION OF LIBERTY)

49.     Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

50.     By the actions described above, Respondents, acting under color of law, have violated and continue to violate common law principles of due process as well as the Due Process Clause of the Fifth Amendment to the Constitution of the United States. Respondent

Bush has ordered the prolonged, indefinite, and arbitrary detention of individuals including

Petitioner al Darby, without due process of law, and the remaining Respondents have

implemented those orders.  Respondents' actions deny Petitioner al Darby the process accorded

to persons seized and detained by the United States military in times of armed conflict as

established by, *inter alia*, the Uniform Code of Military Justice, Army Regulation 190-8, Articles

3 and 5 of the Third and Fourth Geneva Conventions, the common law, and customary

international law as reflected, expressed, and defined in multilateral treaties and other

international instruments, international and domestic judicial decisions, and other authorities.

51.     To the extent that Petitioner al Darby's detention purports to be authorized by the

Military Order, that Order violates the Fifth Amendment on its face and as applied to Petitioner

al Darby, and therefore also violates 28 U.S.C. § 2241(c)(3).

52.     To the extent that Petitioner al Darby's detention is without basis in law and

violates the common law principles of due process embodied in 28 U.S.C. § 2241(c)(1),

Petitioner's detention is unlawful.

53.     Accordingly, Petitioner al Darby is entitled to habeas, declaratory, and injunctive

relief as well as any other relief the court may deem appropriate.

## SECOND CLAIM FOR RELIEF
### (DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES – UNLAWFUL CONDITIONS OF CONFINEMENT)

54.     Petitioners incorporate by reference all preceding paragraphs as if set forth fully

herein.

55.     By the actions described above, Respondents, acting under color of law, have

violated and continue to violate Petitioner al Darby's right to be free from unlawful conditions of

confinement, in violation of the Due Process Clause of the Fifth Amendment to the Constitution

of the United States.

17

56.    Accordingly, Petitioner al Darby is entitled to declaratory and injunctive relief as well as any other relief the court may deem appropriate.

## THIRD CLAIM FOR RELIEF
## (GENEVA CONVENTIONS – ARBITRARY DENIAL OF DUE PROCESS)

57.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

58.    By the actions described above, Respondents, acting under color of law, have denied and continue to deny Petitioner al Darby the process accorded to persons seized and detained by the United States military in times of armed conflict as established by specific provisions of the Third and Fourth Geneva Conventions. *See* Geneva Convention Relative to the Treatment of Prisoners of War, Aug. 12, 1949, 6 U.S.T. 3316, 75 U.N.T.S. 135 ("Third Geneva Convention"); Geneva Convention Relative to the Protection of Civilian Persons in Time of War, Aug. 12, 1949, 6 U.S.T. 3516, 75 U.N.T.S. 267 ("Fourth Geneva Convention").

59.    Violations of the Geneva Conventions are direct treaty violations and are also violations of customary international law, and constitute an enforceable claim under 28 U.S.C. § 2241(c)(3).

60.    Respondents are liable for this conduct described above, insofar as they set the conditions, directly and/or indirectly facilitated, ordered, acquiesced, confirmed, ratified, and/or conspired to violate the Geneva Conventions.

61.    Accordingly, Petitioner al Darby is entitled to habeas, declaratory, and injunctive relief as well as any other relief the court may deem appropriate.

FOURTH CLAIM FOR RELIEF
(INTERNATIONAL HUMANITARIAN AND HUMAN RIGHTS LAW – ARBITRARY
DENIAL OF DUE PROCESS)

62.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

63.    By the actions described above, Respondents have denied and continue to deny Petitioner al Darby the process due to persons seized and detained by the United States military in times of armed conflict, established by customary international humanitarian and human rights law as reflected, expressed, and defined in multilateral treaties and other international instruments and domestic judicial decisions, and other authorities.

64.    Because Respondents are detaining Petitioner al Darby "under or by color of the authority of the United States," they are violating 28 U.S.C. § 2241(c)(1), and because Respondents are detaining Petitioner al Darby "in violation of the Constitution or laws or treaties of the United States," they are also violating 28 U.S.C. § 2241(c)(3).

65.    Accordingly, Petitioner is entitled to habeas, declaratory, and injunctive relief as well as any other relief the court may deem appropriate.

FIFTH CLAIM FOR RELIEF
(ALIEN TORT STATUTE – TORTURE)

66.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

67.    By the actions described above, Respondents directed, ordered, confirmed, ratified, and/or conspired together and with others to bring about acts that deliberately and intentionally inflicted severe physical and psychological abuse and agony upon Petitioner in order to obtain coerced information or confessions from him, punish or intimidate Petitioner al Darby or for other purposes. Upon information and belief, among other abuses, Petitioner al

19

Darby has been: held in and surrounded by conditions of isolation, constant vulnerability to repeated interrogation and severe beatings, and the threat or reality of being kept in a cage with no privacy; shackled with heavy chains and irons; placed under or threatened with prolonged periods of solitary confinement as punishment for minor rule infractions; interrogated while shackled and chained in painful positions; exposed to extremes of temperature; subjected to violent behavior or the threat of violence; threatened with rendition to countries that practice torture; sexually humiliated; denied access to counsel and family; deprived of adequate medical care; and subjected to repeated psychological abuse.

68.     The acts described herein constitute torture in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violate customary international law prohibiting torture as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

69.     Respondents are liable for said conduct because they directed, ordered, confirmed, ratified, and/or conspired together and with others to commit the acts of torture against Petitioner al Darby.

70.     Petitioner al Darby was forced to suffer severe physical and psychological abuse and agony, and is entitled to habeas, declaratory, and injunctive relief and other relief to be determined at trial.

## SIXTH CLAIM FOR RELIEF
### (ALIEN TORT STATUTE – CRUEL, INHUMAN OR DEGRADING TREATMENT)

71.     Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

72.     The acts described herein had the intent and the effect of grossly humiliating and debasing Petitioner al Darby, forcing him to act against his will and conscience, inciting fear and

anguish, and breaking his physical or moral resistance.  As such, the acts described herein constitute cruel, inhuman or degrading treatment in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violated customary international law prohibiting cruel, inhuman or degrading treatment as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

73.      Respondents are liable for said conduct in that they directed, ordered, confirmed, ratified, and/or conspired together and with others to cause the cruel, inhuman or degrading treatment of Petitioner al Darby.

74.      Petitioner al Darby was forced to suffer severe physical and psychological abuse and agony, and is entitled to declaratory and injunctive relief as well as other relief to be determined at trial.

SEVENTH CLAIM FOR RELIEF
(ALIEN TORT STATUTE –  ARBITRARY ARREST
AND PROLONGED ARBITRARY DETENTION)

75.      Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

76.      The acts described herein constitute arbitrary arrest and detention of Petitioner al Darby in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violated customary international law prohibiting arbitrary detention as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

77.      Respondents are liable for said conduct in that they directed, ordered, confirmed, ratified, and/or conspired together and with others to bring about the arbitrary arrest and prolonged arbitrary detention of Petitioner al Darby in violation of the law of nations under the

21

Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violated customary international law

prohibiting arbitrary arrest and prolonged arbitrary detention as reflected, expressed, and defined

in multilateral treaties and other international instruments, international and domestic judicial

decisions, and other authorities.

78.     As a result of Respondents' unlawful conduct, Petitioner al Darby has been and is

deprived of his freedom, separated from his family, and forced to suffer severe physical and

mental abuse, and is therefore entitled to habeas, declaratory, and injunctive relief, and such

other relief as the court may deem appropriate.

EIGHTH CLAIM FOR RELIEF
(ALIEN TORT STATUTE – ENFORCED DISAPPEARANCE)

79.     Petitioners incorporate by reference all preceding paragraphs as if set forth fully

herein.

80.     Through the actions described above, Respondents directed, ordered, confirmed,

ratified, and/or conspired to bring about the enforced disappearance of Petitioner al Darby in

violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts

violated customary international law prohibiting enforced disappearances as reflected, expressed,

and defined in multilateral treaties and other international instruments, international and

domestic judicial decisions, and other authorities.

81.     As a result of Respondents' unlawful conduct, Petitioner al Darby has been and is

deprived of his freedom, separated from his family, and forced to suffer severe physical and

mental abuse, and is therefore entitled to habeas, declaratory and injunctive relief and such other

relief as the court may deem appropriate.

NINTH CLAIM FOR RELIEF
(ARTICLE II OF THE UNITED STATES CONSTITUTION –
UNLAWFUL DETENTION)

82.     Petitioners incorporate by reference all preceding paragraphs as if set forth fully

herein.

83.     Petitioner al Darby is not, nor has he ever been, an enemy alien, lawful or

unlawful belligerent, or combatant of any kind.  The Executive branch of the United States

government lacks the authority to order or direct military officials to detain civilians who are

seized far from the theater of war or occupied territory or who were not "carrying a weapon

against American troops on a foreign battlefield."  *Hamdi*, 542 U.S. at 522, 124 S. Ct. at 2642

n.1.

84.     Through the actions described above, Respondent Bush has exceeded and

continues to exceed his authority under Article II of the United States Constitution by

authorizing, ordering and directing that military officials seize Petitioner al Darby and transfer

him to military detention, and by authorizing and ordering their continued military detention at

Guantánamo.  All of the Respondents acted and continue to act without lawful authority by

directing, ordering, and/or supervising the seizure and military detention of Petitioner al Darby.

85.     The military seizure and detention of Petitioner al Darby by the Respondents is

*ultra vires* and illegal because it violates Article II of the United States Constitution.  To the

extent that the Respondents assert that Petitioner's detention is authorized by the Military Order,

that Order exceeds Respondents' authority under Article II and is *ultra vires* and void on its face

and as applied to Petitioner al Darby.

86.     To the extent that Respondents assert that their authority to detain Petitioner al

Darby derives from a source other than the Military Order, including without limitation

Respondent Bush's inherent authority to conduct foreign affairs or to serve as Commander-in-

Chief of the United States Armed Forces, whether from Article II of the Constitution or otherwise, Respondents lack that authority as a matter of fact and law.

87.    Accordingly, Petitioner al Darby is entitled to habeas, declaratory, and injunctive relief, as well as any other relief the court may deem appropriate.

TENTH CLAIM FOR RELIEF
(VIOLATION OF THE APA – ARBITRARY AND CAPRICIOUS
UNLAWFUL DETENTION)

88.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

89.    Army Regulation 190-8 prohibits the detention of civilians who were seized away from the field of battle or outside occupied territory or who were not engaged in combat against the United States.  *See* Enemy Prisoners of War, Retained Personnel, Civilian Internees and Other Detainees, A.R. 190-8 (Oct. 1, 1997), at 1-6(g), *available at* http://www.usapa.army.mil/ pdffiles/r190_8.pdf (hereinafter "Army Reg. 190-8") ("Persons who have been determined by a competent tribunal not to be entitled to prisoner of war status may not be executed, imprisoned, or otherwise penalized without further proceedings to determine what acts they have committed and what penalty should be imposed.").

90.    By arbitrarily and capriciously detaining Petitioner al Darby in military custody in the manner described above, Respondents have acted and continue to act *ultra vires* and unlawfully in violation of the Administrative Procedures Act, 5 U.S.C. § 706(2).

91.    Accordingly, Petitioner al Darby is entitled to habeas, declaratory, and injunctive relief, as well as any other relief the court may deem appropriate.

## ELEVENTH CLAIM FOR RELIEF
## (VIOLATION OF THE APA – ARBITRARY AND CAPRICIOUS DENIAL OF DUE PROCESS)

92.     Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

93.     Through the actions described above, Respondents, acting under color of law, have arbitrarily and capriciously denied and continue to deny Petitioner al Darby the process accorded to persons seized and detained by the United States military in times of armed conflict as established by Army Regulation 190-8 in violation of the Administrative Procedures Act, 5 U.S.C. § 706(2).

94.     Accordingly, Petitioner al Darby is entitled to habeas, declaratory, and injunctive relief, as well as any other relief the court may deem appropriate.

## TWELFTH CLAIM FOR RELIEF
## (VIOLATION OF THE APA – TORTURE AND CRUEL, INHUMAN OR DEGRADING TREATMENT)

95.     Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

96.     Through the actions described above, Respondents have acted and continue to act arbitrarily and capriciously by directing, ordering, confirming, ratifying, and/or conspiring to unlawfully subject Petitioner al Darby to torture and/or cruel, inhuman or degrading treatment in violation of Army Reg. 190-8 and the Administrative Procedures Act, 5 U.S.C. § 706(2). *See* Army Reg. 190-8, at 1-5(b) ("The following acts are prohibited: murder, torture, corporal punishment, mutilation, the taking of hostages, sensory deprivation, collective punishments, execution without trial by proper authority, and all cruel and degrading treatment.").

97.     Accordingly, Petitioner al Darby is entitled to declaratory and injunctive relief, as well as any other relief the court may deem appropriate.

## THIRTEENTH CLAIM FOR RELIEF
## (VIOLATION OF THE RIGHT TO COUNSEL AND TO ACCESS TO THE COURTS)

98.     Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

99.     Respondents, purportedly acting from a concern for national security, consistently have contrived to intrude upon Petitioner al Darby's right to consult with counsel by conditioning counsel's access to Petitioner al Darby on unreasonable terms, including classification/declassification procedures, all in violation of Petitioner al Darby's attorney-client privilege, his work product privilege, and the Fifth and Sixth Amendments to the United States Constitution.

100.     Accordingly, Petitioner al Darby is entitled to habeas, declaratory, and injunctive relief, as well as any other relief the court may deem appropriate.

## FOURTEENTH CLAIM FOR RELIEF
## (DUE PROCESS CLAUSE – RENDITION)

101.     Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

102.     Upon information and belief, Petitioner al Darby is at risk of being rendered, expelled or returned without lawful procedures to a country that engages in torture.  The transfer of Petitioner al Darby to a country where there is a foreseeable and direct risk that he will be subjected to torture constitutes a violation of his rights under the Due Process Clause of the Fifth Amendment to the United States Constitution.

103.     Accordingly, Petitioner al Darby is entitled to declaratory and injunctive relief, as well as any other relief the court may deem appropriate.

## FIFTEENTH CLAIM FOR RELIEF
## (CONVENTION AGAINST TORTURE AND CONVENTION RELATING TO THE STATUS OF REFUGEES – RENDITION)

104.     Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

105.     Upon information and belief, Petitioner al Darby is at risk of being rendered, expelled or returned without lawful procedures to a country that engages in torture.  The transfer of Petitioner al Darby to a country where there is a foreseeable and direct risk that he will be subjected to torture constitutes a direct violation of Petitioner's rights under the Covenant Against Torture and the 1954 United Nations Convention Relating to the Status of Refugees, *entered into force* Apr. 22, 1954, 19 U.S.T. 6259, 189 U.N.T.S. 150.

106.     Accordingly, Petitioner al Darby is entitled to declaratory and injunctive relief, as well as any other relief the court may deem appropriate.

## SIXTEENTH CLAIM FOR RELIEF
## (ALIEN TORT STATUTE – RENDITION)

107.     Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

108.     Upon information and belief, Petitioner al Darby is at risk of being rendered, expelled or returned without lawful procedures to a country that engages in torture.  The transfer of Petitioner al Darby to a country where there is a foreseeable and direct risk that he will be subjected to torture constitutes a violation of his rights under customary international law, which may be vindicated under the Alien Tort Statute.

109.     Accordingly, Petitioner al Darby is entitled to declaratory and injunctive relief, as well as any other relief the court may deem appropriate.

27

## V.    PRAYER FOR RELIEF

WHEREFORE, Petitioners pray for relief as follows:

1.    Grant the Writ of Habeas Corpus and order Respondents to release Petitioner al Darby from his current unlawful detention;

2.    Order that Petitioner al Darby be brought before the Court or before a Magistrate Judge assigned by the Court at a convenient facility to conduct proceedings under the supervision of the Court to vindicate his rights;

3.    Order that Petitioner al Darby cannot be transferred to any other country without the specific, written agreement of Petitioner al Darby and his counsel while this action is pending;

4.    Order that Petitioner al Darby cannot be delivered, returned, or rendered to a country where there is a foreseeable and imminent risk that he will be subject to torture;

5.    Order Respondents to allow counsel to meet and confer in person with Petitioner al Darby, in private and unmonitored attorney-client conversations;

6.    Order Respondents to cease all interrogations of Petitioner al Darby, direct or indirect, while this litigation is pending;

7.    Order Respondents to cease all acts of torture and cruel, inhuman and degrading treatment of Petitioner al Darby;

8.    Order and declare that the Military Order to be *ultra vires* and unlawful in violation of Article II of the United States Constitution, the Fifth Amendment to the United States Constitution, the Uniform Code of Military Justice, the Administrative Procedures Act, 5 U.S.C. § 702, the treaties of the United States and customary international law;

28

9.    Order and declare that the prolonged, indefinite, and restrictive detention of

Petitioner al Darby without due process is arbitrary and unlawful and a

deprivation of liberty without due process in violation of common law principles

of due process, the Due Process Clause of the Fifth Amendment to the United

States Constitution, the regulations of the United States military, the treaties of the

United States, and customary international humanitarian law; and

10.   Grant such other relief as the Court may deem necessary and appropriate to

protect Petitioner's rights under the common law, the United States Constitution,

federal statutory law, and international law, including, if necessary, designating

Petitioner Hassen to act as Next Friend of Petitioner al Darby.

Dated: December 12, 2005

Respectfully submitted,

Counsel for Petitioners:

SIMPSON THACHER & BARTLETT LLP

By *Paul C. Curnin* /KEA

Mark J. Stein
Paul C. Curnin
Veronica Vela
Karen E. Abravanel
Nathaniel I. Kolodny
425 Lexington Avenue
New York, New York 10017
(212) 455-2000

*Of Counsel*
Barbara J. Olshansky (NY0057)
Tina Monshipour Foster
Gitanjali S. Gutierrez
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, New York 10012
Tel: (212) 614-6439
Fax: (212) 614-6499

29