# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
                                    )
SALIM MUHOOD ADEM,                  )
                                    )
            Petitioner,             )
                                    )
      v.                            )        Civil Action No. 05-CV-0723 (RWR)
                                    )
GEORGE W. BUSH,                     )
      President of the United States,  )
      et al.,                       )
                                    )
            Respondents.            )
                                    )
```

**RESPONDENTS' MOTION FOR STAY AND RECONSIDERATION OF
MAGISTRATE JUDGE'S ORDER AND OPINION DOCKETED ON MARCH 21, 2006**

Respondents hereby object to and seek reconsideration of Magistrate Judge Alan Kay's

March 21, 2006 Memorandum Opinion and Order requiring that respondents promptly permit

counsel to meet with petitioner Salim Muhood Adem, who is detained by the Department of

Defense ("DoD") at the United States Naval Base in Guantanamo Bay, Cuba.  As explained

below, the Magistrate Judge's Order is clearly erroneous and contrary to law for several reasons.

First of all, the Detainee Treatment Act of 2005 withdraws jurisdiction from the Court to grant

the relief the Order provides.  Consequently, the Magistrate Judge has no legal authority to issue

the prospective relief ordered in this case, even with respect to counsel access issues.

Moreover, the Magistrate Judge clearly erred in concluding that the governing protective

order and counsel access procedures in the Guantanamo *habeas* litigation do not require counsel

to supply proof of authority to represent a detainee prior to being permitted privileged access to

the detainee.   To the contrary, the language, structure, and history of the counsel access

procedures evidence a two-layer requirement regarding counsel's authority to bring and then

maintain a *habeas corpus* petition on behalf of a Guantanamo detainee.  First, prior to having privileged access to the detainee, counsel must produce sufficient evidence of counsel's authority to represent the detainee either directly or through a proper "next friend."  Second, counsel must submit evidence of his or her authority to represent the detainee after having the opportunity to meet with the detainee.  The Magistrate Judge clearly erred by conflating these separate, and practical, authorization requirements into a single requirement that counsel who purportedly represents a particular detainee must be provided with privileged access to the detainee on demand and then need only produce evidence of authority to represent the detainee after conducting privileged meetings with the detainee.  In reaching this conclusion, the Magistrate Judge created an extra-legal scheme for establishing jurisdiction in the Guantanamo *habeas* cases that is contrary to law, including the plain terms of the *habeas* statute and the well-established jurisprudence regarding next friend standing.  Further, by requiring the government to provide direct, privileged access to wartime detainees in a military detention facility for counsel merely purporting to represent a detainee, without any showing by counsel of proof of appropriate authority to represent the detainee directly or through a next friend satisfying appropriate standing requirements, the Magistrate Judge's order offends separation of powers.

For these reasons, as more fully explained below, respondents move this Court for an immediate stay of the Magistrate Judge's Order to the extent it requires action by respondents pending the Court's resolution of respondents' motion for reconsideration.  Further, because the Magistrate Judge's Order is clearly erroneous and contrary to law, the Order should be vacated and set aside forthwith.

## BACKGROUND

On April 8, 2005, counsel for petitioner filed a petition for writ of *habeas corpus* in this case styled as a petition directly authorized by Mr. Adem. See Petition (dkt. no. 1). The petition was not signed or verified by Mr. Adem, see 28 U.S.C. § 2242; rather, counsel submitted a declaration stating that he had received Mr. Adem's name as a detainee requesting legal representation. See id. (Apr. 4, 2005 Declaration of Murray Fogler ¶ 4). The case was one of approximately 60 pending habeas petitions on behalf of Guantanamo detainees pending at the time of filing, and one of almost 200 currently pending, generally all of which have been stayed pending a ruling from the D.C. Circuit Court of Appeals in related appeals before it, including regarding the withdrawal of *habeas* jurisdiction of the courts under the Detainee Treatment Act of 2005. See June 6, 2005 Order (dkt. no. 13); Dec. 23, 2005 Minute Order (administratively closing case).

On June 6, 2005, the Court, as was routine at the time in all of the Guantanamo detainee cases pending before it, entered in this case a protective order similar to those entered in other Guantanamo detainee cases pending before other Judges of this Court. See Protective Order and Procedures for Counsel Access to Petitioner at the United States Naval Base in Guantanamo Bay, Cuba (dkt. no. 12) ("Protective Order").

The first two paragraphs of the Protective Order set forth its premises, function, and scope:

> 1. This case likely involves classified national security information or documents, the storage, handling and control of which require special security precautions, and access to which requires a security clearance and a "need to know." This case may also involve other protected information or documents, the storage,

- 3 -

handling and control of which may require special precautions in order to protect the security of United States government personnel and facilities, and other significant government interests.

2.      The purpose of this Protective Order is to establish the procedures that must be followed by all petitioners' counsel, their respective petitioner(s), all other counsel involved in this case, translators for the parties, and all other individuals who receive access to classified national security information or documents, or other protected information or documents, in connection with this case, including the privilege team as defined in Exhibit A.

Id. ¶¶ 1, 2.

To serve this overarching function of preventing the unauthorized disclosure or

dissemination of classified national security information and other protected information, the

Protective Order further provides that "*Petitioners' counsel* are bound by the terms and

conditions set forth in the 'Revised Procedures for Counsel Access to Detainees At the U.S.

Naval Base in Guantanamo Bay, Cuba,' and the procedures for handling mail and documents

brought into and out of counsel meetings, attached hereto as Exhibit A."  Id. ¶ 6 (emphasis

added).  Moreover, "[t]his Protective Order specifically incorporates by reference all terms and

conditions established in the procedures contained in Exhibit A *to the extent they place*

*limitations on petitioners' counsel in their access to and interaction with petitioners or handling*

*of information*."  Id. (emphasis added).

The Revised Procedures for Counsel Access to Detainees at the U.S. Naval Base in

Guantanamo Bay, Cuba, annexed to the Protective Order as Exhibit A, ("Access Procedures") in

turn, set certain terms, conditions, and limitations for *habeas* counsel's access to properly

represented detainees and set out procedures and requirements for the handling of information

obtained from and delivered to detainees, all "for purposes of litigating the cases" in which the

- 4 -

Protective Order is issued.  See Access Procedures § 1.  The Access Procedures, for example, require that visiting counsel obtain a security clearance, id. § III.A, and sign an affirmation acknowledging an agreement to comply with the counsel access procedures, noting that if counsel fail to comply with the procedures, "access to or communication with the detainee will not be permitted," id. § III.B.  Further, the Access Procedures provide that "[p]rior to being permitted access to the detainee," counsel must "provide evidence of his or her authority to represent the detainee."  Id. § III.C.1.[1]  In other Guantanamo detainee cases, this evidence has typically taken the form of letters from detainees directly authorizing a challenge to their detention, or affidavits and authorizations of "next friends" who have filed petitions on behalf of detainees.  In a proper "next friend" case, because the detainee "remains the real party in interest," see Whitmore v. Arkansas, 495 U.S. 149, 163 (1990), the Access Procedures further require a second, subsequent type of authorization, directly from the detainee, once counsel in a proper next friend case is provided access to the detainee.  See Access Procedures § III.C.2.[2]

_____

[1] The Access Procedures provide:

Prior to being permitted access to the detainee, counsel must provide DoD with a Notification of Representation. This Notification must include the counsel's licensing information, business and email addresses and phone number, as well as the name of the detainee being represented by the counsel. Additionally, counsel shall provide evidence of his or her authority to represent the detainee.

Access Procedures § III.C.1.

[2] The Access Procedures provide:

Counsel shall provide evidence of his or her authority to represent the detainee as soon as practicable and in any event no later than ten (10) days after the conclusion of a second visit with the detainee.  The Court recognizes that counsel may not be in a position to present such evidence after the initial meeting with a detainee.  Counsel for detainees and counsel for respondents shall cooperate to the

Upon receiving the appropriate security clearances, counsel purporting to represent petitioner in this case requested a meeting with Mr. Adem at Guantanamo Bay. See Dec. 9, 2005 Declaration of Murray Fogler, Ex. A (dkt. no. 25). Consistent with the practice in all of the pending Guantanamo detainee cases, counsel for respondents informed counsel for petitioner that, pursuant to the Access Procedures, they were required to submit certain documentation to the government prior to being permitted access to visit Mr. Adem at Guantanamo Bay, including "evidence of your authority to represent petitioner." See id. Ex. B. When confronted with this request, counsel for petitioner refused to provide such evidence to the government, despite repeated requests by counsel for respondents. See id. Exs. C-G. Thus, respondents declined to permit counsel to visit Guantanamo Bay absent counsel providing sufficient evidence of his authority to represent petitioner.

On December 9, 2005, counsel for petitioner filed an emergency motion to hold respondents in contempt of the Protective Order because respondents would not permit counsel to visit Guantanamo Bay. See dkt. no. 23, 24, 25. In the declaration submitted in support of that motion, counsel for the first time informed the Court and respondents that the petition for writ of *habeas corpus* in this case, although styled as directly authorized by Mr. Adem, was actually filed because *another detainee* attempted to seek *habeas* relief on behalf of Mr. Adem. See Dec. 9, 2005 Declaration of Murray Fogler ¶ 2 (dkt. no. 25) ("CCR advised me that Salim Muhood

---

fullest extent possible to reach a reasonable agreement on the number of counsel visits allowed. Should counsel for a detainee believe that the government is unreasonably limiting the number of visits with a detainee, counsel may petition the Court at the appropriate time for relief.

Access Procedures § III.C.2.

Adem . . . was a detainee who had made an oral request to another detainee (who was then

represented by counsel) that he sought representation by counsel.").  Because the petition in this

case accordingly should have been styled as one filed through a putative next friend – the

detainee who informed his counsel that Mr. Adem purportedly desires *habeas* relief – and

because no evidence concerning the purported next friend detainee's standing as a next friend, or

even the identity of the purported next friend, had been provided, respondents joined with their

opposition to the motion for contempt a motion for an order to show cause why the case should

not be dismissed for lack of proper next friend standing.  See dkt. nos. 26, 27.  In that motion,

respondents noted that the detainee who informed his counsel that Mr. Adem purportedly desires

*habeas* relief – the putative next friend petitioner – should be required to establish proper next

friend status and justify the exercise of the Court's jurisdiction over this action.  See Whitmore v.

Arkansas, 495 U.S. at 163 ("'[N]ext friend' standing is by no means granted automatically to

whomever seeks to pursue an action on behalf of another.").  To do so, the purported next friend

must satisfy the "two firmly rooted prerequisites" articulated by the Supreme Court in Whitmore:

(1) he must demonstrate that the detainee on whose behalf he claims to file a petition for writ of

*habeas* corpus cannot challenge the legality of his detention himself; and (2) he must have a

significant relationship with this detainee in order to demonstrate that he is truly dedicated to this

detainee's best interests.  Id. at 163-64.  Absent such a showing, court jurisdiction over a petition

is lacking, and the case must be dismissed.  See Resps' Opp. to Emerg. Mot. to Hold

Respondents in Contempt and Mot. for Order to Show Cause at 11-20 (dkt. nos. 26, 27).  In

addition to noting the complete absence of the requisite showing in petitioner's case, the motion

further explained the various avenues available to detainees such as Mr. Adem for directly

- 7 -

accessing the Court or initiating a challenge to the legality of their detention themselves. <u>See</u> <u>infra</u> notes 9-10.

The Court administratively closed the case on December 23, 2005, in light of the fact that the case had been stayed pending resolution of the appeals related Guantanamo detainee cases, <u>In</u> <u>re Guantanamo Detainee Cases</u>, 355 F. Supp. 2d 443 (D.D.C. 2005), <u>appeal docketed</u>, No. 05-8003 (D.C. Cir. Mar. 10, 2005), and <u>Khalid v. Bush</u>, 355 F. Supp. 2d 311 (D.D.C. 2005), <u>appeal docketed sub nom. Boumediene v. Bush</u>, No. 05-5062 (D.C. Cir. Mar. 10, 2005). <u>See</u> Minute Order (Dec. 23, 2005).

On December 29, 2005, Magistrate Judge Kay held an in-chambers conference on petitioner's motion. At that conference, petitioner's counsel revealed for the first time that the detainee acting as Adem's putative next friend was Bisher Al-Rawi, a petitioner in <u>El Banna v.</u> <u>Bush</u>, No. 04-CV-1144 (RWR), and Mr. Al-Rawi had written a letter to his attorney requesting an attorney for Mr. Adem. <u>See</u> Resps' Reply In Support of Mot. for Order to Show Cause Ex A. ¶ 10 (dkt. no. 30).[3] Mr. Al-Rawi, whose own case contesting his detention was initially brought through a family member next friend, also purports to serve as a next friend for at least half a dozen other Guantanamo detainees in a number of other pending *habeas* cases.[4]

---

[3] This exhibit, excerpts of Mr. Al-Rawi's letter, was originally shared with respondents' counsel and the Magistrate Judge at the December 29, 2005 conference, and respondents included it as an exhibit to their reply in support of their motion for an order to show cause (dkt. no. 30).

[4] <u>See</u>, <u>e.g.</u>, <u>Al-Razak v. Bush</u>, No. 05-CV-1602 (GK); <u>Mohammon v. Bush</u>, No. 05-CV-2386 (RBW); <u>Saib v. Bush</u>, No. 05-CV-1353 (RMC); <u>Mousouvi v. Bush</u>, No. 05-CV-1124 (RMC).

- 8 -

Subsequently, through various filings, petitioner's counsel supplemented their motion for contempt and access, including with two declarations from Mr. Al-Rawi.  See dkt. nos. 31, 32. In one of those declarations, Mr. Al-Rawi asserted that Mr. Adem had asked him to get him an attorney, but did so "before the military notified all the prisoners of their right to petition the courts."  Petrs' Mot. to Expedite Petitioner Access to Counsel, Ex. 1.A. ¶¶ 5-6 (dkt. no. 31).

On December 30, 2005, the Detainee Treatment Act of 2005, Pub. L. No. 109-148, tit. X, 119 Stat. 2680 ("the Act"), became law.  The Act, among other things, amended 28 U.S.C. § 2241 to remove court jurisdiction to hear or consider applications for writs of *habeas corpus* and other actions brought in this Court by or on behalf of aliens detained at Guantanamo Bay and created an exclusive review mechanism in the D.C. Circuit, applicable to pending cases, to address the validity of the detention of such aliens held as enemy combatants.  Id. § 1005(e)(1), (h)(2).  Shortly thereafter, respondents' counsel and representative counsel for the Guantanamo *habeas* petitioners were informally informed by the Court that the sense of the Court was to await anticipated guidance from the D.C. Circuit regarding the effect of the Act[5] before deciding any pending motions, with Magistrate Judge Kay being available to assist the parties in the negotiation and resolution of matters raised during this interim period, where appropriate.[6]

---

[5] Oral argument on the issue of the effect of the Act was held before the Court of Appeals on March 22, 2006.

[6] Respondents previously intended to file a motion to dismiss based upon the Act's withdrawal of this Court's jurisdiction, see Respondents' Notification of Supplemental Authority (dkt. no. 29), but refrained from doing so when they were informed of the sense of the Court, including that the Court intended not to rule upon any such motion to dismiss, were it filed, pending the D.C. Circuit's addressing the issue.

- 9 -

Accordingly, in each subsequent filing made by respondents in this case, respondents noted the Act's withdrawal of the Court's jurisdiction over the case, and consistent with our understanding of the sense of the Court, further noted the appropriateness of a stay of all proceedings in the case, including with respect to petitioner's request for relief, pending the resolution of the effect of the Act.  See dkt. nos. 30, 33, 34.

On March 21, 2006, however, Magistrate Judge Kay issued a 33-page memorandum opinion and order requiring that respondents promptly permit counsel to meet with Mr. Adem at Guantanamo.[7]  See dkt. nos. 36 ("Mem. Op."), 37 ("March 21 Order"); Adem v. Bush, 2006 WL 751309 (Mar. 21, 2006).  In sum, the Magistrate Judge construed the Access Procedures applicable in this and the other approximately 200 pending Guantanamo habeas cases not to require counsel to supply proof of authority to represent a detainee prior to being permitted privileged access to the detainee.  Rather, the Magistrate Judge interpreted the Access Procedures to provide that "counsel who purportedly represent a particular detainee" directly, such as in Adem's case, need not provide "evidence of their authority to represent that detainee" until "within 10 days of counsel's second visit with the detainee."  Mem. Op. at 5 (2006 WL 751309 at *2).  Further, the Magistrate Judge explained that with respect to purported next friend petitions, the Access Procedures similarly grant counsel two visits with the detainee on whose behalf the purported next friend asserts a claim before any challenge by respondents to the standing of the alleged next friend "would be ripe."  Id. (emphasis omitted).  If "evidence of counsel's authority to represent . . . [that detainee] directly [permitting conversion of the case to a

_____

[7] The Order denied petitioner's motion to hold respondents in contempt and denied as moot petitioner's motion to expedite counsel access.

- 10 -

direct petition] is not forthcoming within ten days of counsel's second visit . . . then, and only then, would a motion to dismiss for lack of proper 'next friend' standing be appropriate." Id.

In explaining the Order, the Magistrate Judge did not purport to base his ruling on a conclusion that this case was properly brought as a direct petition, directly authorized by Mr. Adem. See Mem. Op. at 28 (2006 WL 751309 at *11) (whether petition properly filed as a direct petition "is an issue for Judge Roberts, and is not before this Court"); see also id. at 4 (2006 WL 751309 at *2) (noting that counsel seek to visit Adem "in order to confirm he does, in fact, want representation"). Nor did the Opinion conclude that Mr. Al-Rawi satisfies applicable next friend standing requirements so that the suit may be maintained as a proper next friend *habeas* petition (though it was not filed as such). See id. at 29 n. 30 (2006 WL 751309 at *12 n.30) (declining to make finding regarding "whether Al-Rawi has a significant enough relationship with Adem to maintain 'next friend' standing"). Rather, the Magistrate Judge stated that the Order rested "alone" on the interpretation of the Access Procedures as permitting counsel two visits with any detainee counsel may purport to represent. Id. at 5 (2006 WL 751309 at *2). In other words, counsel is not required to provide evidence demonstrating direct authorization of a petition by a detainee or satisfaction of the next friend standing requirements under Whitmore by a purported next friend petitioner before the Court exercises jurisdiction over the case and compels respondents to permit counsel direct, privileged access to a wartime detainee at Guantanamo Bay, a secure military detention facility.

In explaining the rationale and basis for the Order, the Magistrate Judge declined to defer a ruling on petitioner's motion for contempt and access to Adem and rejected the Detainee Treatment Act as any impediment to the relief ordered. The Magistrate Judge asserted that the

- 11 -

issues involved in petitioner's motion "do not implicate any of the jurisdictional questions currently pending in the D.C. Circuit and the Supreme Court." Mem. Op. at 21 (2006 WL 751309 at *8); see also id. at 22 (2006 WL 751309 at *8) (relief requested by petitioner "has no bearing on the question of which Court has jurisdiction to review Petitioner's challenge to his detention"). The Opinion characterizes the request for relief as merely one for enforcement of the Protective Order and Access Procedures, and asserts that respondents conceded the Court's authority to act by suggesting in their filings that a stay of a ruling on petitioner's motion was appropriate. See id. at 22 & n.24 (2006 WL 751309 at *8-*9 & n.24).

The Opinion also asserts the jurisdiction to decide petitioner's motion on the ground that counsel would "presumably" represent Adem in any proceeding in the Court of Appeals under the exclusive review provisions of the Detainee Treatment Act. Mem. Op. at 22 n.25 (2006 WL 751309 at *8 n.25). According to the Magistrate Judge, "the need to resolve questions regarding the logistics of counsel access will remain an issue, even if the D.C. Circuit and the Supreme Court determine that the DTA applies to those habeas cases currently pending in the District Court." Id. Thus, the Magistrate Judge concluded there was no need to wait to resolve the issue. Id.

As to the merits of petitioner's request for relief, the Magistrate Judge characterized the Access Procedures as making next friend issues in these cases essentially irrelevant. According to the Court, the Supreme Court in Rasul v. Bush, 542 U.S. 466 (2004), extended statutory habeas jurisdiction under 28 U.S.C. § 2241 to detainees at Guantanamo Bay, after which, first, Judge Kollar-Kotelly in Al Odah v. United States, 346 F. Supp. 2d 1 (D.D.C. 2004), determined "that Guantanamo detainees are entitled to be represented by counsel and that this Court has the

- 12 -

authority to 'craft the procedures necessary' to enforce that right," Mem. Op. at 6-8 (2006 WL
751309 at *3-*4) (quoting Al Odah, 346 F. Supp. 2d at 7); and, second, respondents began
notifying detainees of their ability to challenge their detention through petitions for writs of
*habeas* corpus sent directly to the Court or filed through family members or friends, Mem. Op. at
9-10 (2006 WL 751309 at *4).  In light of these factors, according to the Magistrate Judge, the
"legal fiction of a 'next friend' became largely irrelevant except as a mechanism for identifying
those detainees who seek to challenge their detention in the first instance." Id. at 10 (2006 WL
751309 at *4); see also id. at 10-11 (2006 WL 751309 at *4-*5) (noting parties' and Judges'
assertedly erroneous use of term "next friend" "though the term's traditional legal context no
longer applied").[8]

    In light of these factors and, in the Magistrate Judge's view, the practical irrelevance of
the next friend device in this context, the Magistrate Judge read the Access Procedures not to
require evidence of a counsel's authority to represent a detainee until after counsel is permitted
two visits with the detainee.  Id. at 23-27 (2006 WL 751309 at *9-*11).  The Magistrate Judge
viewed such an interpretation of the Access Procedures as consistent with the Court's authority,
under Al Odah, to craft procedures necessary to enforce a right to counsel to pursue a petition,
while respondents' position that counsel must present appropriate evidence of authority to
represent a detainee prior to being provided direct, privileged access to the detainee, was not
consistent that authority.  See id. at 30, 32 (2006 WL 751309 at *12-*13).  The Magistrate Judge

---

    [8]  The Opinion cites this Court's order directing the next friend petitioner in Ahmed v.
Bush, No. 05-CV-0665 (RWR) (dkt. no. 12) to make a showing demonstrating satisfaction of
next friend standing requirements, and Judge Bates' similar order in Hamily v. Bush, No. 05-CV-
0763 (JDB) (dkt. no. 16), as examples of misuse of the "next friend" term in the Guantanamo
litigation.  See Mem. Op. at 11 (2006 WL 751309 at *4-*5).

viewed respondents' interpretation of the Access Procedures also as inconsistent with the fact

that any next friend standing issue becomes moot if counsel are able to secure direct

authorization from the detainee on whose behalf a petition is brought, id. at 29 (2006 WL 751309

at *12), and with respondents' notification to detainees that they could challenge their detention

"either by writing directly to the Court or by asking a 'friend' or a 'lawyer' to file a petition" for

them.[9] Id. at 30 (2006 WL 751309 at *12).  The Magistrate Judge also cited the fact that

respondents did not begin challenging the standing of fellow detainees as next friends until late

in the summer of 2005, and, had in cases filed prior to that time, permitted counsel direct access

to detainees on whose behalf such "next friend" petitions were filed.  Id. at 30 & n.33 (2006 WL

751309 at *12 & n.33); see id. at 11-12 (2006 WL 751309 at *5).  The Magistrate Judge also

rejected any reading of the Access Procedures to require counsel to submit proof of

representation prior to obtaining access to a detainee because of what the Magistrate Judge

viewed as deficiencies in the affirmative steps respondents have taken to facilitate the filing of

petitions by and legal representation of detainees desiring to challenge their detention[10] and the

---

[9] Beginning in December 2004, the Department of Defense provided written notifications to all detainees at Guantanamo Bay which informed them of their right to file petitions for writ of *habeas corpus* in federal court if they desired to challenge the lawfulness of their detention.  The detainees were informed that they could ask a friend, family member, or lawyer to file a petition on their behalf, and they were also provided with the address of the United States District Court in the event that they desired to submit their own petitions to the Court through the mail system administered by the Department of Defense.  See Second Declaration of Frank Sweigart, ¶¶ 3-5 & Exs. A-C (Exhibit A to Resps' Opp. to Emerg. Mot. to Hold Respondents in Contempt and Mot. for Order to Show Cause).

[10] In addition to the written notifications provided to all detainees at Guantanamo Bay which advised them of their right to file petitions for writ of *habeas corpus* and options for doing so, see supra note 9, the Department of Defense also delivered to detainees who indicated a desire to challenge the legality of their detention a notification providing these detainees with a form to complete and mail to the American Bar Association, which has agreed to recruit

functioning of the mail system available to detainees to send letters to counsel or the Court.  See id. at 31-32 (2006 WL 751309 at *13); id. at 13-19 (2006 WL 751309 at *5-*7).

In conclusion, the Magistrate Judge asserted the "lack of any possible prejudice to the Government" from allowing counsel to visit Adem to "confirm his desire for representation in person," and cited "the importance of Adem's right to counsel," and ordered respondents "to comply with the Protective Order and allow Adem's counsel to meet with him in person."  Id. at 33 (2006 WL 751309 at *13).

Respondents now timely move for reconsideration and a stay of the Magistrate Judge's Order.  See FED. R. CIV. P. 72(a); LCvR 72.2(b).[11]

## **ARGUMENT**

Under Federal Rule of Civil Procedure 72(a), when a nondispositive, pretrial matter is referred to a Magistrate Judge for determination, a party may object to the Magistrate Judge's ruling, and "[t]he district judge to whom the case is assigned shall consider such objections and shall modify or set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law."  FED. R. CIV. P. 72(a); see 28 U.S.C. § 636(b)(1)(A).  Local Civil Rule 72.2(c) similarly provides that upon a motion for reconsideration, a Judge may modify or set

---

volunteer counsel for detainees desiring representation.  Beginning in September 2005 the Department of Defense delivered (and will continue to deliver on an ongoing basis) this notification to detainees who file *pro se* petitions for writ of *habeas corpus* and are not already represented by counsel, as well as other detainees who indicate to Guantanamo personnel that they desire or request the assistance of counsel.  See Second Declaration of Frank Sweigart, ¶ 7 & Ex. E (Exhibit A to Resps' Opp. to Emerg. Mot. to Hold Respondents in Contempt and Mot. for Order to Show Cause).

[11] The Opinion is dated March 14, 2006, see Mem. Op. at 33, but the Opinion and Order were not entered on the docket or served on respondents (through the ECF system) until March 21, 2006.  See dkt. nos. 36, 37.

aside any portion of a Magistrate Judge's order "found to be clearly erroneous or contrary to law." LCvR 72.2(c).

"A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Campbell v. Microsoft Corp., No. 04-CV-2060 (RWR), 2006 WL 463263 at *2 (D.D.C. Feb. 24, 2006) (citing United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948)). Questions of law are reviewed de novo under the "contrary to law" standard. See Weekoty v. United States, 30 F. Supp. 2d 1343, 1344 (D.N.M. 1998). The Court, "therefore, owes no deference to the magistrate [judge]'s legal conclusions[,] and it may substitute its own judgment on questions of law." Id.

As explained below, the March 21 Opinion and Order in this case should be set aside as clearly erroneous and contrary to law.

## I. The Magistrate Judge's Order is Contrary to Law Because The Detainee Treatment Act of 2005 Withdraws District Court Jurisdiction To Provide The Relief Called For In The Order.

The Magistrate Judge's Order is contrary to law, first of all, because the Detainee Treatment Act of 2005 withdraws jurisdiction from the Court to grant the relief the Order provides. The Act, among other things, amends the federal *habeas* corpus statute to remove court jurisdiction to hear or consider applications for writs of *habeas corpus* and other actions brought in this Court by or on behalf of aliens detained at Guantanamo. Section 1005(e)(1) of the Act amends 28 U.S.C. § 2241 to provide that "no court, justice, or judge shall have jurisdiction" to consider either (1) *habeas* petitions filed by aliens detained by the Department of Defense at Guantanamo, or (2) any other action relating to any aspect of the detention of such

- 16 -

aliens.  In addition, the Act creates an exclusive review mechanism in the D.C. Circuit to address

the validity of the detention of such aliens held as enemy combatants; section 1005(e)(2) of the

Act states that the D.C. Circuit "shall have exclusive jurisdiction to determine the validity of any

final decision of a Combatant Status Review Tribunal that an alien is properly detained as an

enemy combatant," and it further specifies the scope and intensiveness of that review.  Section

1005(e)(1), which eliminates the jurisdiction of the courts to consider *habeas* and other actions

brought by Guantanamo detainees, was made immediately effective without reservation for

pending cases, and § 1005(e)(2), which establishes the exclusive review mechanism in the D.C.

Circuit, was made expressly applicable to pending cases.  Id. § 1005(h).  In light of the statutory

withdrawal of this Court's jurisdiction, and the creation of an exclusive review mechanism in the

D.C. Circuit, the Court had no jurisdictional basis to order respondents to "promptly permit

counsel to meet with Petitioner in person."  See March 21 Order.

      Notwithstanding the plain terms of the Act, the Magistrate Judge incorrectly concluded

that "the issues raised by Adem's motion seeking access to counsel pursuant to the Amended

Protective Order do not implicate any of the jurisdictional questions" presented by the Act.  See

Mem. Op. at 21 (2006 WL 751309 at *8).  In reaching this conclusion, the Court avoided ruling

on the jurisdictional effect of the Act by creating a "counsel access" exception to the Act that has

no legal foundation.  The Court cannot avoid the Act's jurisdictional ouster by framing the issue

simply as one of counsel access.  "Without jurisdiction [a] court cannot proceed at all in any

cause."  Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94 (1998).  Therefore, when

Congress withdraws jurisdiction, the affected court no longer has any power to act or to proceed

further with the case.  See Ex parte McCardle, 74 U.S. (7 Wall.) 506, 514 (1869) ("Jurisdiction is

- 17 -

power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause."). Indeed, it is well settled that statutes such as § 1005(e)(1) of the Act that remove jurisdiction apply to pending cases and ordinarily should be given immediate effect. The courts have "regularly applied intervening statutes conferring or ousting jurisdiction, whether or not jurisdiction lay when the underlying conduct occurred or when the suit was filed." Landgraf v. USI Film Prods., 511 U.S. 244, 274 (1994). This practice is followed because "jurisdictional statutes speak to the power of the court rather than to the rights or obligations of the parties." Id. (internal quotation marks and citation omitted); see also Bruner v. United States, 343 U.S. 112, 116-17 (1952) ("This rule — that, when a law conferring jurisdiction is repealed without any reservation as to pending cases, all cases fall with the law — has been adhered to consistently by this Court."). In this case, the Act has eliminated the Court's jurisdiction, which means the Court no longer has the power to order the relief the Magistrate Judge's Order provides.[12]   For this reason, the Court's Order is contrary to law.

The Magistrate Judge also concluded that his Order was a proper exercise of authority to enforce the applicable Protective Order and Access Procedures, notwithstanding the Act's withdrawal of the Court's jurisdiction. See Mem. Op. at 21-22 (2006 WL 751309 at *8). This conclusion is clearly erroneous or contrary to law. As an initial matter, the Protective Order and Access Procedures do not order, require, or compel respondents to permit a counsel visit with a

---

[12] The effect of the Act in eliminating district court jurisdiction with respect to pending cases such as this one has been fully briefed in the pending D.C. Circuit appeals. Copies of the government's primary briefs in the pending appeals regarding the Act are attached at Tabs 1 and 2.

detainee.  As explained <u>supra</u>, the Access Procedures, which are subsidiary to a Protective Order preventing unauthorized disclosure of classified or protected information, are incorporated into the Protective Order "to the extent they place limitations on petitioners' counsel in their access to and interaction with petitioners or handling of information."  Access Procedures ¶ 6.  While the Access Procedures certainly operate with the assumption that counsel visits will occur in that they set the terms and procedures applicable to any such visits, they do not themselves compel respondents to provide such visits[13] on demand of counsel.[14]  Hence, the Court cannot compel respondents to permit a visit by counsel with a detainee by relying upon "enforcement" of the terms of the Protective Order and Access Procedures.

Thus, the cases cited in the March 21 Opinion to support the order requiring respondents to permit a counsel visit, <u>see</u> Mem. Op. at 22 (2006 WL 751309 at *8), are distinguishable from the present context.  Those cases involved either a court's authority to enforce ongoing protective orders specifically prohibiting public disclosure of confidential discovery information[15] or the

---

[13] While the Access Procedures provide that "[r]easonable efforts will be made to accommodate the counsel's request regarding the scheduling of a meeting," that language is embedded in a paragraph dealing solely with logistical arrangements as to the date and timing of otherwise appropriate counsel meetings with represented petitioners.  <u>See</u> Access Procedures § III.D.1.

[14] The relationship between counsel visits and the access procedures in this case would be analogous to other cases in which an omnibus protective order is entered at the outset of the case governing the use and handling of information that will be exchanged between parties in discovery.  The omnibus protective order may set the terms of how information obtained in discovery is to be treated, shared, or stored, for example, but a party's entitlement to any particular requested discovery is settled through court process (<u>e.g.</u>, a motion to compel) and not through the protective order.  Thus, an omnibus protective order operates with the assumption that discovery will occur, but typically does not by its own terms obligate the parties to produce any particular information.

[15] <u>See</u> <u>Gambale v. Deutsche Bank, AG</u>, 377 F.3d 133, 139 (2d Cir. 2004) (concluding that

court's power to enforce prospective injunctions though civil contempt penalties.[16]  The cases

would also be distinguishable in that while they may involve a court's authority to wind-up

previously exercised jurisdiction (such as in the oversight of the disposition of documents

obtained through court-sanctioned discovery) or to enforce valid, on-going injunctions, here the

Magistrate Judge's Order wreaks a radical reversal of long-standing practice under the Access

Procedures in the Guantanamo cases, with significant impact in the cases, including that

respondents will be required to provide direct, privileged access to wartime detainees in a

military detention facility by counsel merely purporting to represent a detainee, without any

showing by counsel of proof of appropriate authority to represent the detainee directly or through

a next friend satisfying appropriate standing requirements.[17]  Thus, the Order improperly asserts

jurisdiction to move this case forward in the face of a statutory withdrawal of the Court's

---

court has power "to dispose of material in its files as it thinks appropriate or to modify or vacate
its own protective orders with respect to" confidential documents after conclusion of case);
Poliquin v. Garden Way, Inc., 989 F.2d 527, 535 (1st Cir. 1993) ("Where the district court does
protect material during discovery, it is common to provide . . . for post-trial protection including
the return or destruction of protected material."); United Nuclear Corp. v. Cranford Ins. Co., 905
F.2d 1424, 1427 (10th Cir. 1990) (concluding that court has power to modify ongoing protective
order prohibiting public disclosure of all discovery materials following dismissal of underlying
lawsuit).

[16] Broderick v. Donaldson, 437 F.3d 1226 (D.C. Cir. 2006) (concluding that court has
power to impose civil contempt sanctions on employer for violation of 1988 order imposing
continuing obligations on employer based employee's successful sexual harassment suit);
Armstrong v. Executive Office of the President, 1 F.3d 1247, 1281, 1289 (D.C. Cir. 1993)
(concluding that court has power to impose civil contempt sanctions based on defendant's failure
to comply with "multi-part declaratory and injunctive order" regarding preservation of electronic
federal records).

[17] The Magistrate Judge recognized as much, noting the significant impact the ruling
would have with respect to respondents' pending next friend standing challenges.  See Mem. Op.
at 1 n.1, 12-13 n.14 (2006 WL 751309 at *1 n.1, *5 n.14).

- 20 -

jurisdiction by an intervening Act of Congress[18] and raises very real separation of powers concerns.[19]

For similar reasons, the Magistrate Judge's Order cannot legitimately be grounded in any authority of the Court under Judge Kollar-Kotelly's decision in <u>Al Odah v United States</u>, 346 F. Supp. 2d 1 (D.D.C. 2004), which the Magistrate Judge believed permitted the Court to craft procedures necessary to enforce a right to counsel to pursue a petition. The basis of the <u>Al Odah</u> decision rested not on any absolute right to counsel, but on a court's discretionary, statutory authority in *habeas* cases to appoint counsel to represent Guantanamo petitioners properly before the Court, if warranted. <u>See id.</u> at 4-5, 7-8 (citing 18 U.S.C. § 3006A). That authority under the *habeas* statute is now withdrawn with the Act's withdrawal of district court *habeas* jurisdiction (without prejudice, of course, to whether the exclusive review proceedings available in the D.C. Circuit Court of Appeals under the Act entail a right to counsel for detainees involved in such proceedings, <u>see infra</u> at 23-24). Further, <u>Al Odah</u> did not, as here, involve any issue as to whether a *habeas* case had been properly brought and was properly pending before the Court to begin with, so as to support counsel's direct access to a detainee. The case had been filed by

---

[18] <u>Cf.</u> <u>Peacock v. Thomas</u>, 516 U.S. 349, 255 (1996) (concluding that the "primary lawsuit must contain an independent basis for federal jurisdiction" in order for the court to exercise jurisdiction over ancillary enforcement claims).

[19] <u>See also</u> <u>Cafeteria & Rest. Workers Union, Local 473 v. McElroy</u>, 367 U.S. 886, 890 (1961) ("The control of access to a military base is clearly within the constitutional powers granted to both Congress and the President"); <u>Hamdi v. Rumsfeld</u>, 294 F.3d 598, 602-03 (4th Cir. 2002) (court notes in context of challenge to standing of next friend purporting to act on behalf of enemy combatant detainee that the standing doctrine "ensure[s] that the plaintiff has a sufficient personal stake in the outcome of a dispute to render judicial resolution of it appropriate in a society that takes seriously both the idea of separation of powers and, more fundamentally, the system of democratic self-government that such separation serves") (citation and internal quotations omitted).

family member next friends who had retained counsel, and respondents did not object to providing counsel access; merely the monitoring of counsel-detainee meetings was at issue. <u>See</u> 346 F. Supp. 2d at 4-5 ("[T]he Court has confined its present inquiry to the attorney access issues that uniquely affect the three named Petitioners in this case. Accordingly, the Court considers whether the Government can impose real time monitoring on the three Petitioners.").

The Magistrate Judge's Order erroneously asserts that respondents "appear to concede" the Court's authority to act in this matter because respondents argued that a stay of a ruling on petitioner's motions would be "appropriate." <u>See</u> Mem. Op. at 22 n.24 (2006 WL 751309 at *8 n.24). Respondents have not conceded the point, however. In every filing since the Act took effect, respondents argued that the Court lacked jurisdiction to consider petitioner's claims and grant the relief sought. <u>See</u> Resps' Reply in Support of Mot. for an Order to Show Cause at 1 n.1 (dkt. no. 30); Resps' Opp. to Petr's Mot. to Expedite Petitioner Access to Counsel at 1-3 (dkt. nos. 33, 34). More fundamentally, however, "jurisdiction cannot be waived" and the Court has "an independent obligation to assure" itself of jurisdiction. <u>See</u> <u>Floyd v. District of Columbia</u>, 129 F.3d 152, 155 (D.C. Cir. 1997). The Court failed to conduct the necessary jurisdictional analysis in this case, opting instead to sidestep the issue through alleged enforcement of the Protective Order and Access Procedures, which, as explained above, lacks an appropriate basis.

Further, the assertion that by suggesting a stay of any Court ruling on petitioner's request for relief pending resolution of the jurisdictional issue, respondents have conceded the Court's authority to grant petitioner's counsel's request for relief, is unfair. The only reason respondents have not moved to dismiss this case in its entirety and have, instead, noted that a stay of a ruling on petitioner's request for relief would be appropriate pending resolution of the jurisdictional

issues, is that it has been respondents' understanding that it was the sense of the Court to await

anticipated guidance from the Court of Appeals regarding the effect of the Act before deciding

any pending motions in the Guantanamo *habeas* cases.[20]  Respondents previously intended to file

a motion to dismiss based upon the Act's withdrawal of this Court's jurisdiction, see Notice of

Supp. Authority (dkt. no. 29), but in deference to the Court refrained from doing so when they

were informed of the sense of the Court, including that the Court intended not to rule upon any

such motion to dismiss, were it filed, pending the D.C. Circuit addressing the issue.

Accordingly, even though respondents have thus far not moved to dismiss this case and continue

to allow counsel for other properly represented detainees to visit Guantanamo pending a decision

from the D.C. Circuit, such actions cannot be construed as a waiver or concession of jurisdiction,

even if such a waiver were possible.  A stay of a ruling by the Court on petitioner's requests for

relief pending resolution of the jurisdictional issues would have been appropriate, and for the

same reason it would be appropriate for the Court now to vacate or stay the effect of the

Magistrate Judge's ruling pending resolution of the jurisdictional issues.  But it is not appropriate

for the Magistrate Judge or the Court to grant petitioner's counsel the relief he seeks without

resolution of the jurisdictional issue.

     The Magistrate Judge's Order also erroneously purports to find authority to order the

requested relief in the fact that the Act provides detainees the opportunity to seek review in the

D.C. Circuit of the validity of a Combatant Status Review Tribunal determination that the

detainee is an enemy combatant and thus properly detainable.  See Mem. Op. at 22 n.25 (2006

---

[20]  The effect of the Act is being addressed in supplemental briefing in the Guantanamo
detainee appeals pending before the D.C. Circuit.  Oral argument was held on March 22, 2006.

WL 751309 at *8).  According to the Court, counsel would "presumably" represent Adem in any such proceeding before the D.C. Circuit; thus, "the need to resolve questions regarding the logistics of counsel access will remain an issue, even if the D.C. Circuit and the Supreme Court determine that the DTA applies to those *habeas* cases currently pending in the District Court." Id.  That an exclusive review proceeding before the D.C. Circuit is possible, however, does not authorize the Court to act on petitioner's requested relief; to the contrary, it precludes the Court from acting on the matter.  As explained above, the Act vests "exclusive" jurisdiction in the D.C. Circuit "to determine the validity of any final decision of a Combatant Status Review Tribunal that an alien is properly detained as an enemy combatant."  See Act § 1005(e)(1).  The Act also expressly provides that exclusive review in the D.C. Circuit is applicable to pending cases.  Id. § 1005(h).  As the Court of Appeals explained in Telecommunications Research and Action Center v. FCC, 750 F.2d 70, 75, 78-79 (D.C. Cir. 1984), a request for relief in district court that might affect the future, exclusive jurisdiction of the Court of Appeals is subject to the exclusive review of the Court of Appeals.  Consequently, issues of counsel access, and the prerequisites for such access, if any, are exclusive matters for the D.C. Circuit.  No authority can be found for the Magistrate Judge's Order in the fact that an exclusive review mechanism is available for detainees in the D.C. Circuit.  The Magistrate Judge's Order is contrary to the statutory withdrawal of this Court's jurisdiction pursuant to the Detainee Treatment Act.

**II.    The Magistrate Judge's Order is Also Clearly Erroneous and Contrary to Law Because It Is Contrary To The Language of the Access Procedures And The Applicable History And Context of The Guantanamo Cases And Because It Results In a Regime Inconsistent With Jurisdictional Principles.**

> **A.    The Magistrate Judge's Interpretation of the Access Procedures Is Contrary to the Language of The Access Procedures and the History and Context of the Litigation, and Thus Is Clearly Erroneous.**

Aside from lacking jurisdiction to order the requested relief, the Magistrate Judge acted in a clearly erroneous fashion in rejecting respondents' position that the Access Procedures require that "[p]rior to being permitted access to the detainee," counsel must "provide evidence of his or her authority to represent the detainee," and then subsequently provide an additional, direct authorization of representation from the detainee on whose behalf the *habeas* petition was filed, "no later than then (10) days after the conclusion of a second visit with the detainee." See Access Procedures § III.C.  The Access Procedures govern "for purposes of litigating the cases in which this Order [the Protective Order] is issued." Id. § I.  Consistent with that purpose, § III.C of the Access Procedures provides, in pertinent part:

> 1.    Prior to being permitted access to the detainee, counsel must provide DoD with a Notification of Representation. This Notification must include the counsel's licensing information, business and email addresses and phone number, as well as the name of the detainee being represented by the counsel. Additionally, counsel shall provide evidence of his or her authority to represent the detainee.

> 2.    Counsel shall provide evidence of his or her authority to represent the detainee as soon as practicable and in any event no later than ten (10) days after the conclusion of a second visit with the detainee.  The Court recognizes that counsel may not be in a position to present such evidence after the initial meeting with a detainee.  Counsel for detainees and counsel for respondents shall cooperate to the fullest extent possible to reach a reasonable agreement on the number of counsel visits allowed. Should counsel for a detainee believe that the government is unreasonably limiting the number of visits with a detainee, counsel may petition the Court at the appropriate time for relief.

- 25 -

The Access Procedures thus impose, in a paragraph applicable to certain requirements that must be met "[p]rior to being permitted access to the detainee," § III.C.1, a requirement of some evidence of authority to represent the detainee.  This evidence has typically taken the form of letters from detainees directly authorizing a challenge to their detention, or affidavits and authorizations of "next friends" who have filed petitions on behalf of detainees.  Then, a separate paragraph of the Access Procedures, § III.C.2,  requires counsel to submit final evidence of his or her authority to represent the detainee after having the opportunity to meet with the detainee.[21]  Hence, the Access Procedures contemplate a two-layer requirement regarding counsel's authority to bring and then maintain the lawsuit.  See Mem. Op. at 26 (2006 WL 751309 at *10).

The Magistrate Judge interpreted § III.C.2, however, merely to refer to the timing of the requirement imposed by the last sentence of § III.C.1.  See Mem. Op. at 24-25 (2006 WL 751309 at *9-*10).  The Magistrate Judge's reading, however, fails to account for the fact that a proof of authorization requirement is contained in a paragraph that begins, "Prior to being permitted access to the detainee . . . ."  Instead of giving credence to two separate paragraphs in § III.C containing authority of representation requirements, the Magistrate Judge's reading of § III.C effectively, and improperly, moves the last sentence of § III.C.1 to combine it into § III.C.2.  This is inconsistent with the structure of the two paragraphs, as well as with the fact that each of the paragraphs in § III.C refers to separate submission requirements.

Furthermore, respondents' reading of the Access Procedures is consistent with the history and context of the Guantanamo *habeas* cases and the application of the Access Procedures in

---

[21] Additional paragraphs in § III.C of the Access Procedures concern notification of withdrawal or termination of representation by counsel, Access Procedures § III.C.3, and certification of the source of funding for counsel in the representation, id. § III.C.4.

- 26 -

those cases, while the Magistrate Judge's reading is inconsistent with that history, context, and

application. The Guantanamo detainee *habeas* cases pending when the Protective Order and

Access Procedures were negotiated and entered in the cases were uniformly next friend cases

brought by family member next friends. See In re Guantanamo Detainee Cases, 344 F. Supp. 2d

174 (D.D.C. 2004) (entering Protective Order on Nov. 8, 2004). The counsel access procedures

that served as the basis for the current Access Procedures were initially proposed by respondents

in July 2004. The procedures explicitly required, in what would become the current § III.C.1,

that "[p]rior to being permitted access to the detainee," in addition to a Notification of

Representation,

> the counsel must provide sufficient details regarding the circumstances of his/her
> retention to demonstrate the counsel's authority or standing to bring a habeas or
> other federal court action on the detainee's behalf.

See Response to Complaint in Accordance with Court's Order of July 25, 2004, Exhibit A, in Al

Odah v. United States, No. 02-CV-0828 (CKK) (dkt. no. 46) (copy attached for the Court's

convenience at Tab 3). In addition, in a paragraph § III.C.2, the procedures provided,

> After meeting with the detainee, counsel must provide DoD with an
> *Acknowledgement of Representation*. This document must be signed by the
> detainee and must specifically state that the detainee is being represented in
> habeas or other federal litigation by counsel named in the Acknowledgement.

Id. (emphasis and misspelling of "Acknowledgment" in original). Furthermore, it was expressly

contemplated and conveyed to the Court that once counsel demonstrated his or her authority "to

bring a habeas . . . action on the detainee's behalf," i.e., at the time through demonstration that

the case was an appropriate next friend case, the opportunity for access to the detainee would

allow, where appropriate, conversion of the next friend petition into a petition directly authorized

by the detainee. See, e.g., Tab 3 (Response to Complaint in Accordance with Court's Order of

- 27 -

July 25, 2004 in <u>Al Odah</u>) at p. 30 n.14 ("the access [to detainees] provided by the military will allow counsel to meet with the detainees, and counsel may then wish to convert their next-friend petition into a direct petition or otherwise amend their petition").

Subsequently, other aspects of the Protective Order and Access Procedures were the subject of negotiations and litigation of certain issues before Senior Judge Green, who served as Coordinating Judge in the cases at the time.  This process culminated in a version of the access procedures being proposed by one petitioner's counsel,[22] to which respondents objected in part.[23] Both versions proposed by the parties contained the versions of § III.C.1 and C.2 originally proposed by respondents, with the additional requirement that the "Acknowledgment of Representation" be provided "as soon as is practical," and the provisions were considered non-controversial, though there had been discussion between counsel for the parties regarding the number of visits with a detainee that counsel would be allowed once access was permitted to obtain any such direct authorization of representation from the detainee.  Thus, when Judge Green issued the Protective Order and Access Procedures in their current form, no change in contemplated operation of Access Procedures, <u>i.e.</u>, access being conditioned on initial proof of authority to represent a detainee with the requirement that direct authorization be submitted "as

---

[22] <u>See</u> Petr's Mot. for Order Requiring Parties to Abide By Proposed Procedures for Counsel Access & Ex. A (Proposed Procedures for Counsel Access) (dkt. no. 33) (filed Oct. 22, 2004 in *Begg v. Bush*, No. 04-CV-1137 (RMC)) (copy attached for the Court's convenience at Tab 4).

[23] <u>See</u> Resps' Response to Nov. 1, 2004 Order Setting Deadline for Submission in Response to Petr's Mot. for Order Requiring Parties to Abide By Proposed Procedures for Counsel Access & Ex. 1 (Revised Procedures for Counsel Access) (filed Nov. 4, 2004 in *In re Guantanamo Detainee Cases*, Nos. 02-CV-0299, *et al.*) (copy attached for the Court's convenience at Tab 5).

soon as practical" thereafter (though in no event more than 10 days after a second visit, under the final version of the Access Procedures), was comprehended.

Indeed, the consistent practice of respondents throughout the litigation has been to require counsel to provide proof of some authority to represent a detainee, either through a next friend or directly, prior to counsel being permitted access to the detainee. It was not even suspected that the language of § III.C.1 and C.2 might raise an issue until last year when respondents began to confront various petitioners' counsel seeking access to detainees regarding counsel's authority to represent detainees they purported to represent, either directly or through improper (in respondents' view) next friends. It was at that time a reading of § III.C.1 and C.2 consistent with the Magistrate Judge's reading in this case began to be cited by counsel resistant to providing evidence of proof of their representation authority.

The Magistrate Judge attempts to dismiss respondents' position as "hard to take seriously" because in his view, the next friend device was merely a "legal fiction" that became "largely irrelevant" because of the possibility that, in light of the notifications provided by DoD to detainees of their ability to contact the Court and submit a petition directly and the opportunity for visits between counsel and detainees in properly brought next friend cases, detainees might directly submit or authorize a *habeas* petition, such that the next friend issue becomes moot. <u>See</u> Mem. Op. at 9-10, 26 n.29, 29 (2006 WL 751309 at *4, *10 n.29, *12). The fact of the matter is, however, that the next friend device has not been "irrelevant" or mere fiction in the Guantanamo *habeas* cases. Indeed, *habeas* counsel have sought and the Court has granted relief, such as requiring advance notice of any transfer of the detainee from Guantanamo, in cases brought by putative next friends prior to counsel visiting detainees, presumably based on the putative

- 29 -

standing of the next friends.  Moreover, the possibility that a next friend authorization might

become moot does not mean that the Access Procedures never contemplated a showing of

representation authority prior to access to a detainee being granted.  Indeed, because in a "next

friend" case, the detainee on whose behalf the case is brought "remains the real party in interest,"

see Whitmore, 495 U.S. at 163, it is that detainee's legitimate desires and wishes that control in

the litigation.  See also id. at 164 (cautioning against "intruders or uninvited meddlers" filing

lawsuits on behalf of unwitting strangers).  It is unremarkable that a next friend authorization

might become moot once direct access to the detainee on whose behalf a case is brought is

obtained; the likelihood that the detainee may express his desires with respect to a lawsuit

brought on his behalf certainly does not render the next friend device "irrelevant."

       In sum, the Magistrate Judge's apparent view that respondents' reading of the Access

Procedures is contrary to the factual and procedural underpinnings of the Guantanamo cases is

wrong.  Indeed, for these reasons explained above, the Magistrate Judge's reading of the Access

Procedures is inconsistent with the language of the Access Procedures, as well as with the history

and context of the Guantanamo *habeas* cases and the application of the Access Procedures in the

cases, and is clearly erroneous.

      **B.**    **The Magistrate Judge's Interpretation of the Access Procedures Results In
The Extra-Legal Assertion of Court Jurisdiction And Is Contrary To Law.**

       As explained above, the Magistrate Judge's reading of the Access Procedures is that

counsel who purport to represent a detainee, either directly (as counsel initially purported to do in

Adem's case), or through a putative next friend (as the situation actually exists in Adem's case),

need not provide any evidence of any authority to represent the detainee until "within 10 days of

counsel's second visit with the detainee."  See Mem. Op. at 5 (2006 WL 751309 at *2).  Even if

- 30 -

such a reading were possible divorced from consideration of the history and context of the Guantanamo *habeas* cases, the reading creates a scheme that is contrary to law, and it can and should be rejected for that reason alone.  The Magistrate Judge's interpretation of the Access Procedures essentially results in the creation of court jurisdiction in *habeas* actions that is contrary to the plain language of the *habeas* statute and requirements for standing under that statute.  Section 2242 of the *habeas* statute requires that a *habeas* petition must be "signed and verified by the person for whose relief it is intended or by someone acting in his behalf."  28 U.S.C. § 2242.  Thus, the law provides only two avenues by which a *habeas* petition may be properly brought: (1) the individual who is seeking *habeas* relief must sign and verify the petition, i.e., the petition must be directly authorized; or (2) the petition must be signed and verified by another person acting on that individual's behalf – a "next friend" – whom the Supreme Court has determined must satisfy certain requirements in order to properly serve in this capacity.  See Whitmore, 495 U.S. at 163-64.  The Whitmore requirements have not been determined to have been satisfied in this case; thus, the Magistrate Judge's Order in effect invents a new, third option for standing that is not found in the *habeas* statute or case law.  Under the theory reflected in the Memorandum Opinion, a court may exercise jurisdiction over a case simply upon some person acting as a conduit and passing along to an attorney a purported request for *habeas* relief or assistance of counsel from another individual, without any demonstration of an attorney-client relationship between counsel and the person on whose behalf relief is sought or satisfaction of the "next friend" requirements established by the Supreme Court.  See Mem. Op. at 10 (2006 WL 751309 at *4) ("[T]he detainees who initiated a *habeas* petition on behalf of a fellow detainee generally do not seek to serve as a 'next friend' in the traditional sense, but are

- 31 -

simply passing on another detainee's request for help, a fact that can be confirmed once counsel meets directly with the detainee.").[24]   There is simply no basis in the law for such an approach.[25]

The Magistrate Judge's Opinion attempts to justify the creation of this unprecedented "conduit" theory of establishing standing in *habeas* cases by citing certain detainees' purported beliefs about the circumstances of detention at Guantanamo Bay which, in the Magistrate Judge's view, warrant an extra-legal scheme for establishing jurisdiction in these *habeas* cases.   Not only is the assessment reflected in the Memorandum Opinion of the factual circumstances involved often inaccurate, but the circumstances of detention at Guantanamo Bay in any event do not justify disregarding the plain language of the *habeas* statute and governing case law.

The Opinion incorrectly concludes that petitioners in this case may be excused from establishing proper *habeas* standing because the notifications provided by the Department of Defense to detainees at Guantanamo Bay regarding their right to file a petition for *habeas* corpus caused confusion among the detainees.   Specifically, the Magistrate Judge criticized the

---

[24]   Although the Magistrate Judge believed the "next friend" standing doctrine to be merely a "legal fiction" in the Guantanamo detainee *habeas* cases and largely irrelevant in these cases, see Mem. Op. at 10 (2006 WL 751309 at *4), other Judges of the Court who have addressed the issue of a detainee's ability to seek *habeas* relief on another detainee's behalf have recognized that the Supreme Court's Whitmore requirements for next friend standing must be satisfied before the Court may exercise jurisdiction over the case.   See, e.g., Ahmed v. Bush, No. 05-CV-0665 (RWR) (Order dated May 24, 2005) (dkt. no. 12); Hamlily v. Bush, No. 05-CV-0763 (JDB) (Order dated October 3, 2005) (dkt. no. 16); Ahmed Doe v. Bush, No. 05-CV-1458 (ESH), et al. (Order dated November 4, 2005) (dkt. no. 10) (Oberdorfer, J.).

[25]   Thus, even if respondents' reading of § III.C of the Access Procedures was not consistent with the plain language of § III.C, as the Magistrate Judge believed, respondents' application of the Access Procedures to require some demonstration of appropriate representation authority prior to providing access to the detainee "for purposes of litigating the case[] in which the . . . [Access Procedures were] issued," Access Procedures § I, is compelled by jurisdictional considerations.

- 32 -

notifications as "fail[ing] to provide any explanation of what a petition for *habeas corpus* is or how a detainee would go about getting one," Mem. Op. at 9 n.9 (2006 WL 751309 at *4 n.9); <u>see id.</u> at 31-32 (2006 WL 751309 at *13), and informing the detainees that they can "ask a friend" to file a petition on their behalf without also advising them of the jurisdictional requirements of "next friend" standing as articulated by the Supreme Court.  <u>See</u> Mem. Op. at 29 (2006 WL 751309 at *12) ("The Government uses the term 'next friend' but in reality, Al-Rawi is simply a 'friend' who, at the explicit invitation of the Department of Defense, communicated Adem's direct request for counsel to help him challenge his detention to his lawyer.").  The Opinion cites no legal basis for these critiques.  Moreover, the government cannot simply waive jurisdictional requirements mandated by the *habeas* statute and governing Supreme Court precedent by advising detainees that they may "ask a friend" to file a *habeas* petition on their behalf, nor was it the government's intent to do so.  <u>See</u> <u>Floyd v. District of Columbia</u>, 129 F.3d 152, 155 (D.C. Cir. 1997) (noting that "jurisdiction cannot be waived" and the Court has "an independent obligation to assure" itself of jurisdiction).

In any event, although the Magistrate Judge was apparently persuaded by certain detainees' subjective, hearsay beliefs about general confusion among *other* detainees at Guantanamo Bay regarding the filing of *habeas* petitions, <u>see</u> Mem. Op. at 14-20 (2006 WL 751309 at *5-*7),[26] the record in this case establishes that the Department of Defense's notifications adequately informed detainees how they may challenge the legality of their

---

[26] Mr. Adem's alleged request to Al-Rawi for assistance in obtaining counsel, upon which this case is based, however, was made "before the military notified all the prisoners of their right to petition the courts."  Petrs' Mot. to Expedite Petitioner Access to Counsel, Ex. 1.A. ¶¶ 5-6 (dkt. no. 31).

detention and, as a result, scores of petitions have been filed on behalf of detainees at Guantanamo Bay.  The notifications notified each detainee at Guantanamo Bay that "you may challenge your detention in a United States court" and "[y]ou may ask a civilian judge to look at the lawfulness of your detention through a process called a *petition for writ of habeas corpus*." <u>See</u> Second Declaration of Frank Sweigart, Ex. A-C (Exhibit A to Resps' Opp. to Emerg. Mot. to Hold Respondents in Contempt and Mot. for Order to Show Cause).  The notifications further explained that detainees may "ask a friend or family member or a lawyer" to file a petition on their behalf, or they may do so themselves by writing to the United States District Court for the District of Columbia at an address provided on the notifications.  <u>See id.</u>  Thus, although the notifications may not have provided the detainees with a precise legal definition and explanation of a "petition for writ of *habeas corpus*," they clearly explained to the detainees that they may ask a United States judge to review whether they should be detained at Guantanamo Bay and provided them with options on how to do so.  As a result of these notifications, 56 petitions for writ of *habeas corpus*, <u>i.e.</u>, letters construed as petitions, have already been filed by detainees writing directly to the Court.  Further, other detainees have directly authorized petitions by writing to lawyers already representing other detainees, and scores of additional detainees have filed petitions through family members and friends who arguably satisfy the Supreme Court's requirements for next friend standing.  Given that hundreds of detainees have legitimately sought to challenge the legality of their detention by seeking *habeas* relief in federal court, the Magistrate Judge's conclusion that the notifications were inherently misleading and insufficient

is incorrect, and in any event, does not justify excusing petitioners from satisfying the necessary jurisdictional requirements in *habeas* cases.[27]

Similarly, the Memorandum Opinion inappropriately relies on conclusory generalizations about the reliability of the detainee mail system at Guantanamo Bay to justify the creation of an extra-legal, "conduit" theory for establishing *habeas* standing in this case. See Mem. Op. at 19 n.22 (2006 WL 751309 at *7 n.22). As explained in the record, detainees are afforded the opportunity regularly to send and receive mail through the mail system administered by the Department of Defense and through the International Committee for the Red Cross. See Sweigart Declaration, Ex. D. Given that Guantanamo Bay is an overseas military base operating during a time of war, respondents acknowledge that mail may take some time to be transmitted to and from Guantanamo Bay through the United States Postal Service (which is beyond the control of the Department of Defense), however, the processing by the Department of Defense of incoming and outgoing detainee mail at Guantanamo Bay has consistently taken two weeks, on average.[28] See id. Regardless, any dissatisfaction that might exist with regard to the timing of

---

[27] In addition, as explained supra, detainees who indicate to Guantanamo personnel that they desire a lawyer, are provided a form in their own language (or are read the form in their language if they are illiterate) to request a lawyer from the ABA. See Second Declaration of Frank Sweigart ¶ 7 & Ex. E (Exhibit A to Resps' Opp. to Emerg. Mot. to Hold Respondents in Contempt and Mot. for Order to Show Cause).

[28] The Magistrate Judge incorrectly assumed that the Access Procedures "govern detainees' access to the outside world . . . [and] provides for two different mail systems: one for legal mail and one for non-legal mail." Mem. Op. at 4 n.5 (2006 WL 751309 at *2 n.5). The Access Procedures of the Protective Order only establishes procedures for privileged "legal mail" for use in the context of the Guantanamo detainee *habeas* cases. See Access Procedures §§ I, IV. The processes by which detainees may send and receive non-privileged, "non-legal" mail to anyone outside Guantanamo Bay are described in the Declaration of 1LT Wade M. Brown, attached to the Sweigart Declaration at Exhibit D, and were operational prior to the entry of the Protective Order. See, e.g., Coalition of Clergy, Lawyers, and Professors v. Bush, 310 F.3d

- 35 -

the delivery of mail to and from detainees should have no bearing on whether petitioners should be required to satisfy the jurisdictional standing requirements for *habeas* actions contained in the *habeas* statute and articulated by the Supreme Court.[29]  See Whitmore, 495 U.S. at 155-56 ("A federal court is powerless to create its own jurisdiction by embellishing otherwise deficient allegations of standing.").[30]

The Magistrate Judge's Opinion also improperly penalizes respondents for "the inconsistencies in [their] approach to counsel access under the Protective Order."  Mem. Op. at 30 n.33 (2006 WL 751309 at *12 n.33).  Specifically, the Magistrate Judge notes that "[f]rom the time the Protective Order was first entered until approximately mid-summer 2005, the Government raised no objection to the practice of detainees initiating a *habeas* petition through a

---

1153, 1160 (9th Cir. 2002) (noting, pre-Rasul, that Guantanamo detainees were able to send and receive mail and were permitted to communicate outside Guantanamo through the International Committee of the Red Cross).

[29] Of course, because the Magistrate Judge's Order purports to rest "alone" on the interpretation of operative language of the Access Procedures, see Mem. Op. at 5 (2006 WL 751309 at *2), and does not resolve respondents' motion for an order to show cause as to why the case should not be dismissed for lack of proper "next friend" standing, see id. at 1 n.1, 29 n.30 (2006 WL 751309 at *1 n.1, 12 n.30), further proceedings on issues such as the adequacy of the notifications to detainees and of the mail system for purposes of considering respondents' challenge to next friend standing would be appropriate should the jurisdictional issues under the Detainee Treatment Act be resolved in favor of retention of district court jurisdiction over detainees' *habeas* challenges.  Specifically, respondents should be granted the opportunity to respond to the supplemental factual submissions on the issues in this case, i.e., the supplemental declarations of Mr. Al-Rawi, and in others, e.g., the supplemental declaration of Mr. Kabir in Razakah v. Bush, No. 05-CV-2370 (EGS) (dkt. no. 8) (first cited by Magistrate Judge in Mem. Op. at 9 n.9).

[30] As explained supra at 21-22, Judge Kollar-Kotelly's opinion in Al Odah cannot be viewed somehow authorizing the Court to ignore jurisdictional standing requirements, if such a thing were even possible.  The Al Odah case did not involve a situation in which a counsel's authority to act in the case was in question.

fellow detainee . . . ." Mem. Op. at 11 (2006 WL 751309 at *11).  As explained <u>supra</u>, however, respondents cannot waive a challenge to the Court's jurisdiction, and the question of whether petitioners have established proper standing to sue is central to whether the Court can exercise jurisdiction over this case.  See Consolidated Edison Co. v. Herrington, 752 F. Supp. 1082, 1087 (D.D.C. 1990) ("[S]tanding is jurisdictional.  If the defendants were estopped from raising the issue, this Court would be obliged to consider it *sua sponte*."); see also American Immigration Lawyers Ass'n v. Reno, 199 F.3d 1352, 1357-58 (D.C. Cir. 2000) ("[I]n this circuit we treat prudential standing as akin to jurisdiction, an issue we may raise on our own, in part because the doctrine serves the institutional obligations of the federal courts.") (internal quotations omitted). Indeed, other Judges of this Court, including Your Honor, have raised the issue of petitioners' standing to sue *sua sponte* in other Guantanamo detainee *habeas* cases.  See, e.g., Ahmed v. Bush, No. 05-CV-0665 (RWR) (Order dated May 24, 2005) (dkt. no. 12); Hamlily v. Bush, No. 05-CV-0763 (JDB) (Order dated Oct. 3, 2005) (dkt. no. 16); Othman v. Bush, No. 05-CV-2088 (RWR) (Order dated November 1, 2005) (dkt. no. 2).   The fact that counsel visits occurred in some earlier next friend cases before respondents began affirmatively taking issue with and challenging the asserted next friend standing of detainees in the Guantanamo *habeas* cases as a general matter does not mean that respondents were previously interpreting or applying the Access Procedures any differently than they are now, see supra § II.A, and, in any event, it should have no relevance to whether petitioners should be required to establish that the Court has jurisdiction over this case.

Further, the Magistrate Judge's conclusion that his interpretation of the Access Procedures could result in no "possible prejudice to the Government," Mem. Op. at 33 (2006 WL

751309 at *13), is erroneous.  In fact, the prejudicial impact of that interpretation of the Access

Procedures is significant.  Under the Magistrate Judge's interpretation of the Access Procedures,

which if allowed to stand would be potentially applicable not only in this case but in numerous

other Guantanamo cases in which respondents have challenged next friend standing or counsel

have failed to present sufficient evidence of their authority to represent a detainee,[31] respondents

would be required to provide direct, privileged access to wartime detainees in a military

detention facility by counsel merely purporting to represent a detainee, without any showing by

counsel of proof of appropriate authority to represent the detainee directly or through a next

friend meeting appropriate standing requirements.  Indeed, this interpretation of the Access

Procedures could permit virtually any attorney to file suit asserting that they represent a detainee

and thereby require the government to provide them privileged access to the detainee.  Even if

counsel's ability to claim authority to represent a detainee were cabined by having to receive

word of a detainee's desire for counsel through a purported "conduit" detainee, as in this case,

that arrangement could lead to detainees effectively initiating *habeas* petitions on behalf of, with

concomitant required counsel access to, any detainee they recall once having a conversation with

that gave the "conduit" detainee the inkling that the other detainee might want a lawyer or might

want to challenge his detention.  The separation of powers concerns implicated in such an

arrangement of compelled access to wartime detainees in a military detention facility are

substantial.  See also supra at 20-21.  Such an arrangement flies in the face of fundamental

standing and jurisdictional concepts in the law of *habeas corpus*.

---

[31] Approximately 20 such cases currently exist including those in which respondents have challenged next friend standing.

Accordingly, the Magistrate Judge's interpretation of the Access Procedures results in an extra-legal assertion of court jurisdiction and, thus, is clearly erroneous and contrary to law and should be set aside.

## III.    The Magistrate Judge's Order Should Be Stayed Pending Reconsideration.

The Court should immediately stay the Magistrate Judge's Order to the extent it requires action by respondents pending the Court's resolution of respondents' motion for reconsideration.[32]  The Order requires that respondents "promptly permit counsel to meet with Petitioner in person," dkt. no. 36, and, on April 3, 2006, petitioner's counsel requested a visit with petitioner beginning April 30, 2006, though the feasibility and logistics of such a visit for Guantanamo are not settled.  Further, full briefing on respondents' motion for reconsideration of the Order likely will not be completed until later this month.  Respondents, however, should not be required to provide direct, privileged access to a wartime detainee in a military detention facility by counsel merely purporting to represent the detainee, without any showing by counsel of proof of appropriate authority to represent the detainee directly or through a next friend meeting appropriate standing requirements, as is contemplated by the Magistrate Judge's Order, prior to resolution of this motion for reconsideration.  Aside from the significant jurisdictional issues that exist given the statutory withdrawal of the Court's jurisdiction in the Detainee Treatment Act of 2005, as well as the gravely serious issue of the construction of Access Procedures applicable in the Guantanamo cases, such access raises significant separation of

---

[32] As argued supra at 22-23, a stay of resolution of petitioner's request for relief in this matter would be appropriate pending resolution of the effect of the Detainee Treatment Act on the pending cases, including this one.  If such a course is taken, however, it is imperative that the Magistrate Judge's Order be stayed to preserve the status quo pending resolution of the Detainee Treatment Act issues.

powers concerns. See supra at 37-38. Those separation of powers harms will be incurred in just

a few weeks under the current visit request of counsel unless the Order is stayed. Cf. Cuomo v.

United States Nuclear Regulatory Comm'n, 772 F.2d 972, 974 (D.C. Cir. 1985) (in deciding stay

pending appeal, court balances: "(1) the likelihood that the party seeking the stay will prevail on

the merits of the appeal; (2) the likelihood that the moving party will be irreparably harmed

absent a stay; (3) the prospect that others will be harmed if the court grants the stay; and (4) the

public interest in granting the stay;" "stay may be granted with either a high probability of

success and some injury, or vice versa").

In addition, a stay is appropriate because while the Magistrate Judge's Order remains

effective, the Order is being cited in other cases as authority for the Court to order counsel access

to detainees without any showing of proof of authority to represent the detainee directly or

through a proper next friend.[33]  See Ahmed Doe v. Bush, No. 05-CV-1458 (ESH) (Petrs' Mem.

in Support of Mot. for Entry of Protective Order) (dkt. no. 18) at 2; Nabil v. Bush, No. 05-CV-

1504 (RMC) (Petrs' Mem. in Support of Mot. for Entry of Protective Order) (dkt. no. 28) at 2; Al

Hawary v. Bush, No. 05-CV-1505 (RMC) (Petrs' Mem. in Support of Mot. for Entry of

Protective Order) (dkt. no. 30) at 2; Kabir v. Bush, No. 05-CV-1704 (JR) (Petrs' Mem. in

Support of Mot. for Order Compelling Counsel Access) (dkt. no. 31) at 2; Alsaaei v. Bush, No.

05-CV-2369 (RWR) (dkt. no. 13) (Petrs' Mot. for Expedited Entry of Protective Order); Al

Darby v. Bush, No. 05-CV-2371 (RCL) (dkt. no. 4) (Petrs' Mot. for Expedited Entry of

Protective Order).

---

[33] The Order, as the Magistrate Judge recognized, also has the potential to affect respondents' pending challenges to next friend standing. See Mem. Op. at 1 n.1 (2006 WL 751309 at *1 n.1).

Furthermore, a stay is appropriate because it is not clear that respondents' motion for reconsideration would not become moot once counsel access is permitted.  Given the potential impact of the Order across multiple cases and the very serious jurisdictional and interpretive issues involved, an immediate stay of the Order is appropriate.

Finally, any potential for harm to petitioner would not outweigh the need for stay.  This case has been pending for almost a year, and Congress has by statute now withdrawn the jurisdiction of this Court to proceed in the case.  Maintenance of the status quo through a stay of the Order pending resolution of the motion for reconsideration would not outweigh the potential harms implicated by allowing the Order it's full effect.

Accordingly, the Court should immediately stay the Magistrate Judge's Order.

## **CONCLUSION**

For the foregoing reasons, the Magistrate Judge's Order is contrary to law and clearly erroneous – it is clear from all the circumstances that a mistake has been committed.  The Order and Opinion, accordingly, should be set aside.  Furthermore, the Order should be stayed pending resolution of respondents' motion to reconsider the Order.

Dated: April 4, 2006                    Respectfully submitted,

                                                PETER D. KEISLER
                                                Assistant Attorney General

                                                DOUGLAS N. LETTER
                                                Terrorism Litigation Counsel

- 41 -

_____/s/ Terry M. Henry_____

JOSEPH H. HUNT (D.C. Bar No. 431134)
VINCENT M. GARVEY (D.C. Bar No. 127191)
TERRY M. HENRY
JAMES J. SCHWARTZ
PREEYA M. NORONHA
ROBERT J. KATERBERG
NICHOLAS J. PATTERSON
ANDREW I. WARDEN
EDWARD H. WHITE
MARC A. PEREZ
Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W.  Rm. 7212
Washington, DC  20530
Tel:  (202) 514-4107
Fax:  (202) 616-8470

Attorneys for Respondents