IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AHMED AL DARBY,<br> *et al.*,<br><br>    *Petitioners*,<br><br>   v.<br><br>GEORGE W. BUSH,<br> President of the United States,<br> *et al.*,<br><br>    *Respondents*. | Civil Action No. 05-CV-2371 (RCL) |

**REPLY MEMORANDUM IN SUPPORT OF PETITIONERS'
MOTION FOR EXPEDITED ENTRY OF THE PROTECTIVE ORDER**

Petitioner Ahmed al Darby, acting on his own behalf and through his Next Friend, Petitioner Mohammed Mohammed Hassen (collectively, "Petitioners"), and through his undersigned counsel, respectfully submits this reply memorandum in further support of Petitioners' motion for expedited entry of the Protective Order.

The requested relief is modest: Petitioners seek entry of the Protective Order to gain access to counsel. Petitioner al Darby, like all other detainees at the Guantánamo Bay Naval Station, Cuba ("Guantánamo") is "entitled to counsel, in order to properly litigate the habeas petitions presently before the Court and in the interest of justice." *Al Odah v. United States,* 346 F. Supp. 2d 1, 8 (D. D. C. 2004). This is the same access to counsel currently enjoyed by detainees in whose cases this Court has already entered the Protective Order. *See, e.g.*, *Attash v. Bush,* No. 05-1592 (RCL) (D.D.C. Sep. 1, 2005) (dkt. no. 12). Indeed, undersigned counsel now has access to their client in another detainee case, through the recent entry of the Protective Order. *See Alsaaei v. Bush*, No. 05-2369 (RWR) (Apr. 19, 2006) (dkt. no. 14).

Petitioners' motion can be considered by this Court without implicating the yet-to-be resolved applicability of the Detainee Treatment Act of 2005, Pub. L. No. 109-148, Tit. X (the "DTA"), or the validity of Petitioner al Darby's continued detention. The District Court has imposed an informal stay of all substantive motions in Guantánamo detainee cases while the applicability of the DTA is before the Court of Appeals. But, entry of the Protective Order would not impact the disposition of Petitioners' substantive claims or prejudice Respondents. Furthermore, Petitioner Hassen's next friend authorization is wholly sufficient for entry of the Protective Order.

I. **THE DISTRICT COURT'S INFORMAL STAY DOES NOT APPLY TO THIS MOTION**

On January 12, 2006, Respondents' counsel and attorneys from the Center for Constitutional Rights ("CCR"), co-counsel for Petitioners herein and for numerous other Guantánamo *habeas* petitioners, appeared before Shelly Snook, administrative clerk to Chief Judge Hogan. Petitioners' counsel understand that, in light of the Court of Appeals' *sua sponte* request for supplemental briefing on the applicability of the DTA, the District Court requested that no additional substantive motions be filed until the Circuit Court issued its decision. Mr. Snook made clear, however, that Magistrate Judge Kay would still be available to rule on motions related to non-substantive issues, most notably relating to access to counsel.

Petitioners filed the motion for expedited entry of the Protective Order with the assigned district court judge, the Honorable Royce C. Lamberth, because this case is not yet subject to the November 2, 2005 Coordination Order entered by Judge Kessler in *Rasul v. Bush*, No. 02-299 (CKK) (D.D.C.) and other coordinated cases, which authorized Magistrate Judge Kay to rule on such issues. Nonetheless, because Petitioners' motion concerns access to counsel, it is exactly

the type of application that the District Court contemplated could and would still be filed during the informal stay on substantive motions.

Respondents' opposition, on the other hand, improperly attempts to re-characterize Petitioners' straightforward request for client access as a substantive motion that would violate the informal stay.  Specifically, Respondents make substantive attacks on both the underlying *habeas* petition and the jurisdictional authority of the court, raising precisely the types of arguments that the District Court has made clear it will not hear during the informal stay.  As such, Respondents' arguments aim to prevent resolution of Petitioners' motion until the higher courts determine the applicability of the DTA.  The Court should not tolerate Respondents' attempt to circumvent the terms of the informal stay when the District Court has made it clear that the informal stay does not operate to deprive detainees of access to counsel.

## II.     THE DTA IS IRRELEVANT TO THIS MOTION

Respondents provide no legal basis for their argument that review of the DTA by the Court of Appeals strips this Court of jurisdiction over the issue of Petitioner al Darby's access to counsel.  *See generally* Opp'n Br. at 1-3; Opp'n Br. Ex. A.  Indeed, as Judge Friedman recently held, there is no legal basis for Respondents' arguments because "[d]etainees' right to meet with counsel under the Protective Order is *independent* of the (still-unresolved) question of the Court's jurisdiction to rule on their *habeas* petitions." *Al Salami v. Bush*, No. 05-2452 (PLF) (D.D.C. Apr. 13, 2006) (dkt. no. 12) (emphasis added).  In addition to Judge Friedman, several judges have entered the Protective Order since the passage of the DTA.[1]  Entry of the Protective

---

[1]     *See, e.g., Zadran v Bush,* No. 05-2367 (RWR) (D.D.C., Apr. 12, 2006); *Alsaaei v. Bush,* No. 05-2369 (RWR) (D.D.C., Apr. 12, 2006); *Said v. Bush,* No. 05-2384 (RWR) (D.D.C., Apr. 12, 2006); *Al Shareef v. Bush,* No. 05-2458 (RWR) (D.D.C., Apr. 12, 2006); *Awad v. Bush,* No. 05-2379 (JR) (D.D.C. Apr. 11, 2006); *Thabid v. Bush*, No. 05-2398 (ESH) (D.D.C. Mar. 21, 2006); *Razakah v. Bush*, No. 05-2370 (EGS) (D.D.C. Mar.

Order does not alter the status quo pending resolution of the DTA: undersigned counsel should be allowed to communicate and meet with Petitioner al Darby – who, on information and belief, does not yet know that he has legal representation – pending the Court of Appeals' decision on the applicability of the DTA to pending *habeas* petitions filed by Guantánamo detainees. Respondents rely upon the premature and improper conclusion that the Court of Appeals will rule in their favor and find that the DTA strips the District Court of jurisdiction.

Respondents also assert that "it would be inappropriate for the Court to order relief in the interim that might infringe upon the Court of Appeals' exclusive jurisdiction." Opp'n Br. at 2. This is not so. The Court of Appeals made a *sua sponte* request to be the first court to hear argument on the question of the applicability of the DTA precisely because it wanted to provide clear guidance as to whether the DTA strips the District Court of jurisdiction over these pending *habeas* petitions. *See Boumediene, et al. v. Bush, et. al.,* Nos. 05-5062 and 05-5063 (D.C. Cir. Jan. 27, 2006) (per curiam). If access to clients by other *habeas* counsel infringed upon the Court of Appeals' exclusive jurisdiction, then either Respondents or the Court of Appeals could have sought an immediate stay of all client access to counsel pending the outcome of the Court of Appeals review of the DTA. Neither Respondents nor the Court of Appeals has done so.

Finally, Respondents assert that their mere *intent* to file a motion to dismiss in this and other cases allows them to assert the arguments they may make on such motions. *See* Opp'n Br. at 2, n. 3. But Respondents have not so moved and in fact Respondents cannot move to dismiss these cases on the basis of the DTA until the higher courts determine the applicability of the

---

17, 2006); *Wahab v. Bush*, No. 05-886 (EGS) (D.D.C. Mar. 17, 2006); *Labed Ahmed v. Bush,* No. 05-1234 (EGS) (D.D.C., Mar. 2, 2006); *Mohammad v. Bush,* No. 05-879 (RBW) (D.D.C., Jan. 9, 2006); *Bostan v. Bush,* No. 05-883 (JR) (D.D.C., Jan. 9, 2006); *Khiali-Gul v. Bush,* No. 05-877 (JR) (D.D.C., Jan. 6, 2006).

5

DTA to these cases. For the same reason, Respondents cannot rely on the DTA to justify their arbitrary refusal to consent to the entry of the Protective Order in this case.

**III.   PETITIONERS' NEXT FRIEND AUTHORIZATION IS WHOLLY SUFFICIENT TO WARRANT ENTRY OF THE PROTECTIVE ORDER**

Respondents' challenge to the sufficiency of Petitioner Hassen's next friend authorization is meritless. Respondents claim that Petitioner al Darby has failed to demonstrate why he "cannot submit a petition on his own behalf," Opp'n Br. at 6, and that he has further failed to demonstrate that Petitioner Hassen is dedicated to Petitioner al Darby's best interests. *Id.* Neither argument is supportable. Further, a ruling on the validity of the next friend authorization is not necessary to the entry of the Protective Order because entry of the Protective Order in no way impacts the merits of this action nor prejudices Respondents' defense of this action.

**A.   Petitioners Submitted The *Habeas* Petition In The Most Effective Manner Available**

Respondents' argument that Petitioner al Darby has not demonstrated why he cannot submit a *habeas* petition on his own behalf overlooks the fact that Guantánamo detainees are held virtually *incommunicado* and, until *Rasul*, had neither access to the attorneys claiming to represent them nor the ability personally to seek relief from the courts reviewing their claims. *Rasul v. Bush*, 542 U.S. 466, 471-72 (as cited in *Adem v. Bush*, Mem. Op. at 6, No. 05-723 (RWR) (AK) (D.D.C. Mar. 21, 2006) (dkt. no. 36) (hereinafter "Adem Op.")). In light of these circumstances, Petitioner al Darby requested legal counsel through Petitioner Hassen, knowing that Petitioner Hassen was himself represented by trusted legal counsel who could in turn find counsel to file a *habeas* petition on Petitioner al Darby's behalf.

Respondents claim that the Department of Defense ("DoD") has notified all detainees at Guantánamo of their right to submit *habeas* petitions, and that DoD provides detainees sufficient opportunity to send and receive mail. Opp'n Br. at 6, (Second) Sweigart Decl. ¶¶ 3,7 and Exs.

A-C (attached to Opp'n Br. as Ex. B). Thus, Respondents suggest, Petitioner al Darby has no excuse for not submitting his own, presumably *pro se, habeas* petition. Opp'n Br. at 7-8. Yet, the experience of petitioners in other cases raises significant doubt as to whether Petitioner al Darby was ever adequately informed of his rights or could have fully comprehended the information that may have been received. *See* Adem Op. at 13-20 (describing myriad reasons that detainees either did not trust or did not understand the forms provided to them for filing their own *habeas* petitions directly with the District Court); *see also* Gutierrez Decl. ¶¶ 8-12, 18, *Razakah v. Bush*, No. 05-2370 (EGS) (D.D.C. Feb. 3, 2006) (dkt. no. 8) (attached hereto as Ex. A) (stating that legal notices to detainees were inadequately translated, and did not fully explain what a *habeas* petition was or the procedure for filing such a petition); Gutierrez Decl. ¶¶ 6-9, *Adem v. Bush* (D.D.C. Feb. 7, 2006) (dkt. no. 32) (attached hereto as Ex. B) (stating that very few detainees – generally limited to those who spoke English – understood that they could send a letter to the District Court). Further, as noted by Magistrate Judge Kay, the circumstances of Petitioner al Darby's confinement make it likely that he would not trust a notice from the very same authorities responsible for his continued detention.[2] *See* Adem Op. at 32.

Finally, even if al Darby were to receive, understand, and trust DoD's notice concerning the filing of a *habeas* petition, this very notification instructs detainees that they may *either* file a petition themselves *or* "ask a family member, *friend*, or lawyer to file [a petition] for you." (Second) Sweigart Decl. Ex. E (emphasis added); *see also* Adem Op. at 10. Thus, the DoD's

---

[2]  Many detainees have witnessed retaliatory mistreatment or otherwise obstructive conduct by the United States military towards those detainees seeking access to counsel. See Smith Decl. ¶¶ 99-107, *Razakah v. Bush* (dkt. no. 8) (attached hereto as Ex. C); see also Olshansky Decl. ¶¶ 9-13, 19-22, *Razakah v. Bush* (dkt. no. 8) (attached hereto as Ex. D). Detainees have spoken of their reluctance to involve family members in the petition process for fear of placing those family members at risk. *See* Ex. D, Smith Decl. ¶¶ 88-89.

own notice gives detainees the option of using a friend to file a petition with the court. *Id.* Given the isolation of these detainees, and the likelihood that they will mistrust DoD or an attorney referred by DoD to act on their behalf, Petitioner al Darby's decision to request an attorney through a fellow detainee is clearly reasonable.

**B.     Petitioner Hassen's Relationship To Petitioner al Darby Is Sufficiently Significant To Litigate On Petitioner al Darby's Behalf**

The Court should also reject Respondents' argument that Petitioner Hassen's authorization fails to demonstrate a significant relationship between himself and Petitioner al Darby. Petitioner Hassen's authorization states that he "know[s] Ahmed al Darby well on a personal level" and "know[s] that he wants legal assistance." Falkoff Decl. Ex A (attached to Pet.) (dkt. no. 1). Further, Petitioner Hassen's counsel, Marc D. Falkoff, has submitted a Declaration stating that he has met with Petitioner Hassen in connection with Hassen's *habeas* challenge before this court. Falkoff Decl. ¶¶ 3, 4. At one of those meetings, Mr. Falkoff states, he explained to Petitioner Hassen "the American legal concept of 'Next Friend,'" and Petitioner Hassen indicated that he understood this concept. *Id.* ¶ 4; *see also id.* Ex. A. Based on his communications with Petitioner Hassen, Mr. Falkoff stated that "Mr. Hassen is truly dedicated to the best interests of Mr. [al] Darby, that his relationship with Mr. [al] Darby during their lengthy incarceration at Guantánamo has been significant and meaningful, and that Mr. Hassen is a proper Next Friend for Mr. [al] Darby." *Id.* ¶ 8.

Respondents would fault undersigned counsel for their inability to obtain further information from Petitioner al Darby (including a more detailed authorization), while effectively blocking the very visit that would lead to an efficient resolution of this concern. This argument is a tactical maneuver designed to prevent counsel from obtaining additional information, leaving

Petitioner al Darby in an unfair Catch-22 where he is unable to procure representation and his case remains at a standstill.  *See* Adem Op. at 12.

      **C.**    **The Sufficiency of The Next Friend Authorization Has No Bearing On This Court's Entry Of The Protective Order**

Although Petitioners maintain that they have demonstrated proper Next Friend standing, the Court need not evaluate the sufficiency of Petitioners' next friend authorization to rule on Petitioners' motion for entry of the Protective Order.  As Magistrate Judge Kay has found, the detainees who have initiated a *habeas* petition on behalf of their fellow detainees do not seek to serve as a Next Friend in the traditional sense but are instead "simply passing on another detainee's request for help."  Adem Op. at 10.  Under the Protective Order, counsel has ten days after their second meeting with a detainee in which to provide DoD with direct evidence of representation.  *Id.*; see also *Armstrong v. Exec. Office of the President,* 830 F. Supp. 19, 22 (D.D.C. 1993) (construing the plain language of a protective order).  Once undersigned counsel is permitted to meet with Petitioner al Darby, they can secure a direct authorization, thus swiftly resolving any concerns Respondents may have concerning the Next Friend authorization, without the need for further involvement of the Court.

Upon information and belief, Petitioner al Darby has been detained virtually *incommunicado* and without charge by the United States, may not speak English, and has no access to family or friends.  As such, Petitioner al Darby conveyed his desire to challenge his potentially indefinite detention to Petitioner Hassen, a fellow detainee represented by trusted counsel.  *Rasul* and *Al Odah* clearly establish Petitioner al Darby's right to counsel, and the Protective Order provides the mechanisms by which a detainee may access the counsel to which he is entitled.  Petitioner Hassen's authorization is more than adequate to sustain the Court's

jurisdiction over the Petitioner, and undersigned counsel has fully complied with the procedures necessary to meet Petitioner al Darby.

### IV.     PETITIONER AL DARBY'S INVOLVEMENT IN AN UPCOMING LEGAL PROCEEDING HEIGHTENS HIS NEED FOR COUNSEL

Contrary to Respondents' assertion, Petitioner al Darby's potential involvement in a pending court martial at Fort Bliss, Texas is not "unrelated" to his *habeas* petition. *See* Opp'n Br. at 13 n.15. Upon information and belief, Petitioner has been, and may continue to be, interrogated at Guantánamo by the U.S. Army Criminal Investigation Command in connection with the court martial of Army Pfc. Damien Corsetti. *See* Petrs' Mot. at 2; *see also* Petrs' Mot. Ex. D. Statements in the press may have questioned Petitioner al Darby's motives and truthfulness, and may have accused Petitioner al Darby of membership in al Qaeda, despite the fact that he has not been formally charged. *Id*.

In a Kafkaesque twist to the instant case, Respondents argue that because undersigned counsel is not certain that Petitioner al Darby is the same "Ahmed al Darbi" involved in the pending court martial, undersigned counsel's assertion that they need to meet with Petitioner al Darby in connection with the court martial is "groundless." Opp'n Br. at 13 n. 15. Press reports indicate that the detainee involved in the Corsetti investigation is named "Ahmed al-Darbi" and is being held at Guantánamo. *See e.g.* Petrs' Mot. Ex. D. Further, DoD's recently released list of 558 Guantánamo detainees reflects the existence of only one individual named "al Darbi" at Guantánamo. *See List of detainees who went through complete CSRT process*, *available at* http://www.defenselink.mil/pubs/foi/detainees/detainee_list.pdf (last visited on Apr. 24, 2006) (attached hereto as Ex. E) (list entry #430). Respondents do not deny that Petitioner al Darby is the individual involved in the court martial.

Moreover, Respondents – and Respondents alone – maintain unfettered access to Petitioner al Darby. Accordingly, until undersigned counsel can meet Petitioner al Darby, Respondents must bear full responsibility for resolving any doubts as to Petitioner al Darby's identity. As Judge Friedman recently acknowledged, "affording detainees access to counsel under the Protective Orders will help resolve any ambiguity" concerning identity issues. *See Al Salami v. Bush* (dkt. no. 12).

## CONCLUSION

WHEREFORE, for the foregoing reasons, Petitioners respectfully request that the motion should be granted.

Dated: April 24, 2006

                                                      Respectfully Submitted,

                                                      SIMPSON THACHER & BARTLETT LLP

                                                    /s/ Paul C. Curnin
                                                    Paul C. Curnin
                                                    Veronica Vela
                                                    Karen E. Abravanel
                                                    Nathaniel I. Kolodny
                                                    425 Lexington Avenue
                                                    New York, New York 10017
                                                    Tel: (212) 455-2000
                                                    Fax: (212) 455-2502

                                                    Attorneys for Petitioners

*Of Counsel:*

Barbara J. Olshansky (NY0057)
Tina Monshipour Foster (TF5556)
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, New York 10012
Tel: (212) 614-6439
Fax: (212) 614-6499