UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                              )
SALEEM MUHOOD ADEM,           )
                              )
      Petitioner,             )
                              )
            v.                )    Civil Action No. 05-723 (RWR) (AK)
                              )
GEORGE W. BUSH et al.,        )
                              )
      Respondents.            )
_____)


MEMORANDUM OPINION AND ORDER

      Petitioner Saleem Muhood Adem petitioned for a writ of
habeas corpus challenging the legality of his detention at the
United States Naval facility at Guantanamo Bay, Cuba.
Respondents have moved for an order requiring petitioner to show
cause why the petition should not be dismissed for lack of proper
"next-friend" standing.  Petitioner opposes this motion,
rejecting respondents' premise that the direct petition is
somehow improper or suspect.  Because respondents have
established no facts and cited no law on which to base a
conclusion that the direct petition filed by counsel was
unauthorized, the motion will be denied.

      Respondents also seek reconsideration under Fed. R. Civ. P.
72(a) and Local Civil Rule 72.2(b) of the Memorandum Opinion and
Order issued by Magistrate Judge Alan Kay requiring respondents
to permit petitioner's counsel access to their client.  Because

-2-

the magistrate judge's decision was neither clearly erroneous nor contrary to law, respondents' motion for reconsideration will be denied.

BACKGROUND

Adem is one of hundreds of people being held as enemy combatants at the United States Naval facility at Guantanamo Bay, Cuba.  In late 2004, Adem, who does not speak English, asked another detainee, Bisher Al-Rawi, who was represented by attorney George Brent Mickum, to help Adem contact an attorney.  Adem also told Al-Rawi that Adem had sent a letter directly to Mickum.  On January 4, 2005, Al-Rawi also sent a letter to Mickum, relaying Adem's request for counsel.  (See Dkt. 31, Decl. of Bisher Al-Rawi ("Al-Rawi Decl."), ¶¶ 1-9, Jan. 7, 2006.)

In early 2005, attorney Murray Fogler contacted the Center for Constitutional Rights, a public interest group that has coordinated the prosecution of many habeas petitions on behalf of Guantanamo detainees, to volunteer to represent one of the detainees.  He learned of Adem's request and agreed to represent him.  Fogler was later joined by Rachel Clingman in representing Adem in his habeas petition.  (See Dkt. 25, Decl. of Murray Fogler ("Fogler Decl."), ¶¶ 1-3, Dec. 9, 2005.)

On June 3, 2005, a protective order was entered in anticipation of the sensitive information that usually is involved in these Guantanamo detainee cases and the unusual

-3-

security provisions attendant to the circumstances of the detainee's confinement.  <u>See</u> Dkt. 12, Protective Order, June 3, 2005.  The terms of this protective order are substantially identical to the terms of the protective order entered by Judge Joyce Hens Green on November 8, 2004, and amended and supplemented November 10 and December 13, 2004, in <u>In re Guantanamo Bay Detainee Cases</u>, 344 F. Supp. 2d 174 (D.D.C. 2004), after the parties in those cases had vigorously negotiated and litigated the terms of that order.

The protective order governs counsels' communication with petitioner Adem by its incorporation of the Revised Procedures for Counsel Access to Detainees at the U.S. Naval Base in Guantanamo Bay, Cuba ("Revised Access Procedures").  <u>See</u> Protective Order, Ex. A.  Prior to entry of the protective order, respondents stated that they "[did] not intend [by seeking a stay] to block counsel access to properly represented petitioners" and that they "[did] not object to entry in [this case] of the protective order previously entered in other Guantanamo detainee cases, along with appropriate supplementary orders, to permit such access."  (<u>See</u> Dkt. 4, Mot. to Stay Proceedings Pending Related Appeals at 2, 4/13/2005.)

In accord with the protective order's requirements, Fogler and Clingman each applied for and received a security clearance, filed a memorandum of understanding regarding the terms of the

-4-

protective order, and submitted a Notification of Representation.

Respondents informed Fogler and Clingman that "we require

evidence that petitioner Adem has authorized you directly to

initiate this litigation before you will be provided access to

him." (Dkt. 25, Email from Andrew Warden to Fogler and Clingman,

Nov. 17, 2005, appended as Ex. D to Fogler Decl.)  Later, counsel

for respondents re-stated their position:

> We cannot agree to process or approve this visit
> request until we receive evidence of your authority to
> represent the petitioner in this case, as required by
> paragraph III.C.1 of the Revised Procedures for Counsel
> Access [appended as Ex. A to the protective order of
> June 3, 2005].   . . . [Y]ou have not provided us with
> appropriate evidence of your authority to initiate
> litigation on petitioner's behalf.  . . .  [T]he
> petition in this case . . . is a petition brought
> directly on petitioner Adem's behalf.  Accordingly, we
> require evidence that petitioner Adem has authorized
> you directly to initiate this litigation before you
> will be provided access to him.

(Dkt. 25, Email from Warden to Fogler and Clingman, 11/29/2005,

appended as Ex. G to Fogler Decl.)

Counsel for Adem filed an emergency motion to hold

respondents in contempt of the protective order and to compel

access to their client.  Respondents opposed the motion.  In

addition, respondents filed a motion requesting a show cause

order directing petitioner to show why the case should not be

dismissed for lack of proper next-friend standing.

The emergency motion regarding the operation of the

protective order was referred to Magistrate Judge Kay for

-5-

determination in accord with an Order entered in this case and
many others filed by or on behalf of Guantanamo detainees, that
referred "all Motions pertaining to interpretation or
construction of any protective order which has been entered . . .
to Magistrate Judge Alan Kay pursuant to LCvR 72.2(a)."  Order,
Nov. 2, 2005.  After considering the parties' submissions and
holding a conference with the parties, Magistrate Judge Kay
interpreted the plain language of the protective order and
determined that respondents' refusal to facilitate counsels'
visit with their client was not supported by the terms of the
protective order and ordered respondents promptly to permit
counsel to meet with petitioner in person.  Dkt. 36, Memorandum
Opinion ("Mem. Op."), Mar. 14, 2006; Dkt. 37, Order, Mar. 14,
2006.

    Respondents now contend that the magistrate judge's
determination, as set forth in his Memorandum Opinion, is clearly
erroneous and contrary to law, and urge that the accompanying
Order dated March 14, 2006, be vacated.  (See Dkt. 38, Mot. for
Stay and Reconsideration ("Mot. for Recons."), at 2, Apr. 4,
2006.)  They also argue that the magistrate judge had no
authority to issue the Order.  (Id. at 16-39.)  Respondents also
seek a stay pending resolution on the merits of the motion.  (Id.
at 2, 39-40.)  Petitioner opposes the relief respondents seek.

-6-

DISCUSSION

I.  MOTION FOR ORDER TO SHOW CAUSE

In respondents' view, the direct petition filed by counsel
for Adem should have been filed as a next-friend petition.
Further, they argue that as a next-friend petition, it fails to
meet constitutional standards for next friend standing.
Therefore, they seek an order directing petitioner to show cause
why this case should not be dismissed for lack of proper
standing.  (Dkt. 27, Resp.'s Mot. for Order to Show Cause Why
Case Should Not Be Dismissed for Lack of Proper "Next Friend"
Standing at 9-20.)  Petitioner, citing long-established law,
counters that "'[w]hen an attorney of record appears in an action
for one of the parties, his authority, in the absence of any
proof to the contrary, will be presumed.'" (Dkt. 28, Pet'r's
Response to Mot. for Order to Show Cause at 3, quoting Hill v.
Mendenhall, 88 U.S. 453, 454 (1874).)

"[T]he presumption is that an attorney at law who appears in
regular manner on behalf of a party litigant has authority to do
so; and one who would successfully challenge his authority must
present substantial proof in the form of countervailing evidence
that authority is lacking, in order to justify, on that ground,
an order to strike a pleading from the files." Booth v.
Fletcher, 101 F.2d 676, 683 (D.C. Cir. 1939).  Respondents have
not offered substantial proof that Adem did not intend or desire

-7-

that counsel file the petition on his behalf.  Accordingly,

respondents' motion for a show cause order will be denied.

II.  MOTION FOR RELIEF PURSUANT TO RECONSIDERATION

     "Upon a motion for reconsideration . . ., a judge may modify

or set aside any portion of a magistrate judge's order . . .

found to be clearly erroneous or contrary to law."  LCvR 72.2(c);

accord Fed. R. Civ. P. 72(a) (directing that a judge "shall

modify or set aside any portion of the magistrate judge's order

found to be clearly erroneous or contrary to law.").  "A finding

is 'clearly erroneous' when although there is evidence to support

it, the reviewing court on the entire evidence is left with the

definite and firm conviction that a mistake has been committed."

United States v. U.S. Gypsum Co., 333 U.S. 364, 395 (1948).

     The dispute referred to Magistrate Judge Kay posed the sole

issue of the proper interpretation of a specific term of the

protective order – – "evidence of [counsel's] authority to

represent the detainee."  The disputed term is found in two

adjacent paragraphs of the protective order's Revised Access

Procedures:

     1.   Prior to being permitted access to the detainee,
          counsel must provide DoD with a *Notification of
          Representation.*  This Notification must include
          the counsel's licensing information, business and
          email addresses and phone number, as well as the
          name of the detainee being represented by the
          counsel.  Additionally, counsel shall provide
          evidence of his or her authority to represent the
          detainee.

-8-

>    2.   Counsel shall provide evidence of his or her
>         authority to represent the detainee as soon as
>         practicable and in any event no later than ten
>         (10) days after the conclusion of a second visit
>         with the detainee.  The Court recognizes that
>         counsel may not be in a position to present such
>         evidence after the initial meeting with a
>         detainee.  Counsel for detainees and counsel for
>         respondents shall cooperate to the fullest extent
>         possible to reach a reasonable agreement on the
>         number of counsel visits allowed.  Should counsel
>         for a detainee believe that the government is
>         unreasonably limiting the number of visits with a
>         detainee, counsel may petition the Court at the
>         appropriate time for relief.

Protective Order, Ex. A, Revised Access Procedures §§ III.C.1 &

2.  The magistrate judge concluded that the condition "prior to

being permitted access to the detainee," applied to only the

Notification of Representation, that counsel for petitioner was

required by the terms of the order to make only one evidentiary

showing of his or her authority to represent the detainee, and

that the evidentiary showing is due no later than ten days after

a second visit with the detainee.

Relying primarily on the fact that the term appears in two

separate paragraphs, respondents contend that the term means

different things in paragraph one and paragraph two, and requires

"separate" submissions.  (Mot. for Recons. at 26.)  Specifically,

respondents argue that

>    the [Revised] Access Procedures require that "[p]rior
>    to being permitted access to the detainee," counsel
>    must "provide evidence of his or her authority to
>    represent the detainee," and then subsequently provide
>    an additional, direct authorization of representation
>    from the detainee on whose behalf the *habeas* petition

-9-

> was filed, "no later than ten (10) days after the
> conclusion of a second visit with the detainee."  <u>See</u>
> [Revised] Access Procedures § III.C.

(Mot. to Recons. at 25.)  Respondents also contend that the

parties negotiating the Revised Access Procedures understood that

"access [would] be[] conditioned on initial proof of authority to

represent a detainee with the requirement that direct

authorization be submitted 'as soon as practical [sic]'

thereafter." (<u>Id.</u> at 28-29.)  Thus, respondents argue that the

disputed phrase in the Revised Access Procedures requires (*i*) a

"separate" (<u>id.</u> at 26), two-step sequential showing of evidence

that (*ii*) differs in quantum of proof, with the latter showing

requiring "additional, direct" evidence.  (<u>Id.</u> at 25.)  In

opposition, petitioner argues that Magistrate Judge Kay's

interpretation was correct and that respondents' interpretation

should be rejected.  (Pet'r's Response to Mot. for Stay and

Recons. at 5-7.)

The starting point for interpreting a court order is the

plain meaning of the text.[1]  Following this rule, Magistrate

---

[1]  <u>See, e.g.</u>, <u>Armstrong v. Executive Office of the
President</u>, 830 F. Supp. 19, 22 (D.D.C. 1993) ("[g]iving plain
meaning to [the] language" of the protective order); <u>Positive
Software Solutions, Inc. v. New Century Mortgage Corp.</u>, 337 F.
Supp. 2d 862, 870 & n.11 (N.D. Tex. 2004) ("The starting point of
this inquiry is the language of the [agreed] Protective Order[,]"
and "[w]hen interpreting the terms of a court order, courts
should consider the plain meaning of the language and the normal
usage of the terms in question."); <u>In re Cement and Concrete
Antitrust Litig.</u>, 817 F.2d 1435, 1442-43 (9th Cir. 1987)
(starting with the plain language of the class definition in

-10-

Judge Kay rejected respondents' interpretation and concluded that the temporal condition stated in paragraph one, "[p]rior to being permitted access to the detainee," is restricted to the Notification of Representation.  Respondents' position would have required reading the first paragraph as if the plain language of the first sentence of that paragraph read: "Prior to being permitted access to the detainee, counsel must provide DoD with a Notification of Representation and evidence of his or her authority to represent the detainee"; or as if the plain language of the last sentence of the first paragraph read: "Additionally, prior to being permitted access to the detainee, counsel shall provide evidence of his or her authority to represent the detainee"; or as if paragraph one were structured as follows:

> 1. Prior to being permitted access to the detainee
>    a. Counsel must provide DoD with a Notification . . . Additionally,
>    b. Counsel shall provide evidence of his or her authority to represent the detainee.

---

reviewing a lower court's interpretation of an existing class definition), <u>vacated on other grounds</u>, 940 F.2d 1583 (9th Cir. 1991); <u>City of Hartford v. Chase</u>, 942 F.2d 130, 134 (2d Cir. 1991) ("Because the Confidentiality Order was part of a court-approved agreement, it must be construed according to general principles of contract law.  . . .  Thus, deference is to be paid to the plain meaning of the language . . . and the normal usage of the terms selected.") (citations and quotations omitted); <u>Wilder v. Bernstein</u>, 153 F.R.D. 524, 527 (S.D.N.Y. 1994) ("As is the case in interpreting contracts, a court must look to the plain meaning of the language used in the agreement when interpreting a consent decree.").

-11-

But paragraph one is not composed that way, and there is no warrant to read non-existent plain language into the existing plain language of the Revised Access Procedures.  Thus, Magistrate Judge Kay concluded that while the Revised Access Procedures require Notification of Representation prior to the first visit with the detainee, they do not require evidence of authority to represent the detainee **prior** to the first counsel visit.  Magistrate Judge Kay's conclusion on this point, based on the text's plain language, is well-supported in fact and law and is not clearly erroneous or contrary to law.

Magistrate Judge Kay's determination also conformed to the rule of construction that identical phrases are presumed to have identical meaning.  <u>Sullivan v. Stroop</u>, 496 U.S. 478, 484 (1990) (referring to and applying the "normal rule of [textual] construction that identical words used in different parts of the same [text] are intended to have the same meaning") (citing cases).  Magistrate Judge Kay concluded that the two identical phrases in the two adjacent paragraphs – – "evidence of his or her authority to represent the detainee" – – refer to a single standard to be made in a single showing.  Relying on the "commonplace rule of statutory construction [] that the specific governs the general," he concluded that the detail in the second paragraph specifying **when** the required evidence must be provided simply modifies the bare announcement in the first paragraph that

-12-

such evidence would be required.  Mem. Op. at 25, quoting Ki Se
Lee v. Ashcroft, 368 F.3d 218, 223 (3d Cir. 2004) (internal
quotations omitted).  The plain language of the Revised Access
Procedures affords no support for respondents' contention that
the two identical phrases impose different, and tiered, standards
of evidence.  Magistrate Judge Kay's conclusion in this respect
is not clearly erroneous or contrary to law.

Respondents turn to language used in other protective orders
to argue that their interpretation is consistent with the
intention of the parties who negotiated the Revised Access
Procedures issued by Judge Green as part of the protective order
in In re Guantanamo Detainee Cases.  (Mot. for Recons. at 26-29.)
Specifically, they point to the following precursor language:

1    Prior to being permitted access to the detainee,
     counsel must provide DoD with a *Notification of
     Representation.*  This Notification must include
     the counsel's licensing information, business and
     email addresses and phone number, as well as the
     name of the detainee being represented by the
     counsel.  Furthermore, the counsel must provide
     sufficient details regarding the circumstances of
     his/her retention to demonstrate the counsel's
     authority or standing to bring a habeas or other
     federal court action on the detainee's behalf.

2    After meeting with the detainee, counsel must
     provide DoD with an Acknowledgment of
     Representation.  This document must be signed by
     the detainee and must specifically state that the
     detainee is being represented in habeas or other
     federal litigation by counsel named in the
     Acknowledgment.  This document shall be provided
     by the DoD and shall be signed and submitted as
     soon as is practical.

-13-

(Access Procedures . . . ¶¶ III.C.1 and 2, appended at Tab 4 and
at Tab 5, Ex. 1, to Mot. for Recons.)

Respondents' argument is unavailing in multiple respects.
First, the history and context of text is of no consideration if
the text affords a straightforward interpretation.  See BedRoc
Limited, LLC v. United States, 541 U.S. 176, 183 (2004) (stating
that "inquiry begins with the statutory text and ends there as
well if the text is unambiguous."); Exxon Mobil Corp. v.
Allapattah Servs., Inc., 125 S. Ct. 2611, 2626 (2005) ("As we
have repeatedly held, the authoritative statement is the
statutory text, not the legislative history or any other
extrinsic material."); Sec'y of Labor v. Western Fuels-Utah,
Inc., 900 F.2d 318, 325 (D.C. Cir. 1990) (referring with approval
to the "norm counseling courts to rely on the 'plain meaning' of
[agency] regulations").  Second, the protective order in this
case is not the product of a negotiated agreement between the
parties to **this** action.  Only the respondents, not the
petitioner, in this case were privy to and involved in the
negotiation of the Revised Access Procedures that were entered as
part of Judge Green's protective order.  Thus, to the extent that
the terms of Judge Green's order were negotiated and principles
of contract construction apply here, the intention of the parties
in that case does not control an interpretation of this
protective order.  Third, the fact that particular language was

-14-

used in a prior order but not used in a subsequent order does not compel a conclusion that the precursor language better explains the meaning of the subsequent text than does the latter text itself.  It shows only that the negotiating parties knew of the precursor language and did not use it in the subsequent text. Finally, respondents' assertion that the Revised Access Procedures were designed with next-friend petitions in mind (Mot. for Recons. at 27-29), is undercut by the fact that the Revised Access Procedures do not even mention the next-friend device. Whatever the backdrop and intentions of the parties negotiating the Revised Access Procedures may have been, it is the express language of the resulting order that is given effect by a reviewing court.[2]  Magistrate Judge Kay did not clearly err or act contrary to law when he refused to read into the protective order terms that had been revised or left out, regardless of whether they had been in the contemplation of one or more of the parties.  Respondents' interpretation of the Revised Access Procedures incorporated into the protective order in this case cannot prevail in light of the order's plain language and the law.

Even if their interpretation could be credited, respondents' position in this case is untenable for other reasons.  First, counsel here have in fact provided "evidence of his or her

---

[2]  See note 1, supra.

-15-

authority to represent the detainee" prior to a visit to the
detainee.  Here, a sworn statement provides evidence that Adem
was actively seeking a lawyer to represent him.  (Al-Rawi Decl.)
Under the circumstances, where the detainee's ability to freely
and timely communicate with the outside world is severely
compromised, counsel have provided prima facie evidence of
authority to represent Adem.  Second, respondents' counsel's
demands of Fogler and Clingman are not consistent with
respondents' own stated current interpretation of the protective
order.  On review here, respondents argue that access is
conditioned on "initial proof of authority to represent a
detainee" plus a "requirement that **direct authorization** be
submitted 'as soon as practical [sic]' thereafter (though in no
event more than 10 days after a second visit, under the final
version of the [Revised] Access Procedures)."  (Mot. for Recons.
at 28-29 (emphasis added).)  Counsel for respondents, however,
repeatedly demanded "evidence that petitioner Adem has **authorized
you directly** to initiate this litigation," **prior** to permitting
counsel to visit their client in Guantanamo.  (Fogler Decl., Exs.
D & G (emphasis added).)  The "initial proof" evidentiary demand
made to Fogler and Clingman as a threshold requirement of
scheduling a visit to their client is indistinguishable from the
evidence respondents assert is required under paragraph two,
after the second counsel visit.  Thus, respondents' demands for

-16-

proof have exceeded what they argue the correct interpretation of
the protective order requires.

Aside from the fact that the plain language of the
protective order does not require evidence that the petitioner
directly authorized the particular lawyer to file a petition
before the lawyer has even met the detainee, any such requirement
prior to counsel meeting a Guantanamo detainee would unjustly
pose a conundrum for petitioner.  That Adem has requested a
lawyer to represent him is not disputed.  Requiring a Guantanamo
detainee to identify a specific lawyer from among all the
volunteer lawyers – – most of whom are unknown to the detainee
before a meeting – – is a meaningless exercise.  It would be
unconscionable to tether a detainee's access to counsel to such
an unworkable prerequisite.

Respondents' argument that the magistrate judge lacks
authority to issue the Order dated March 14, 2006, was not before
the magistrate judge, was not briefed, litigated or considered
below, and is not properly the subject of a motion for
reconsideration.  The premise of their argument – – that this
court is without jurisdiction to entertain any habeas corpus
petition filed by a Guantanamo detainee, including one already
pending when the Detainee Treatment Act was signed into law on
December 30, 2005 – – is a disputed issue that was litigated and
is currently under consideration by the United States Court of

-17-

Appeals for the District of Columbia Circuit.  See Kalid v. Bush,
355 F. Supp. 2d 311 (D.D.C. 2005), appeal docketed sub nom.
Boumediene v. Bush, Nos. 05-5062, 05-5063 (D.C. Cir. Mar. 10,
2005).  Until that dispute is resolved, respondents' argument is
premature.

Respondents concede that the protective order remains in
effect.  Mem. Op. at 21.  A court has inherent power to enforce
its own lawful orders.  Broderick v. Donaldson, 437 F.3d 1226,
1234 (D.C. Cir. 2006).  Adem has a right to counsel under the
rule in Al Odah v. United States, 346 F. Supp. 2d 1, 8 (D.D.C.
2004).  He has expressly elected to exercise that right.  The
protective order establishes the procedures to follow in
facilitating a detainee's access to counsel given the unusual
circumstances of detention at Guantanamo.  Enforcing the terms of
the protective order in this case does not pose a danger of
exceeding the court's jurisdiction, even if it is ultimately
determined that this court does not have jurisdiction to
determine the merits of a petition for habeas corpus relief.

Respondents' request for a stay pending resolution of the
merits of their motion for relief upon reconsideration is
rendered moot by this Memorandum Opinion and Order.

CONCLUSION AND ORDER

Because the pending petition was filed as a direct petition,
respondents' motion for an order directing petitioner to show

-18-

cause why the case should not be dismissed for lack of proper next-friend standing will be denied.  Because Magistrate Judge Kay did not clearly err or act contrary to law in interpreting the June 3, 2005 protective order entered in this case, and because a court has inherent authority to enforce its own orders, the relief respondents seek in their motion for reconsideration will be denied.  Accordingly, it is hereby

ORDERED that respondents' motion for an order directing petitioner to show cause [27] be, and hereby is, DENIED.  It is further

ORDERED that respondents' motion for relief based on reconsideration [38] be, and hereby is, DENIED.  It is further

ORDERED that respondents' motion for a stay pending resolution of the motion for reconsideration on the merits [39] be, and hereby is, DENIED as moot.

SIGNED this 28th day of April, 2006.

_____/s/_____
RICHARD W. ROBERTS
United States District Judge