PREVIOUSLY FILED WITH CSO AND
CLEARED FOR PUBLIC FILING

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| AHMED AL DARBY, *et al.,* | ) |
| | ) |
| *Petitioners,* | ) |
| | ) |
| v. | )    Civil Action No. 05-CV-2371 (RCL) |
| | ) |
| GEORGE W. BUSH, *et al.,* | ) |
| | ) |
| | ) |
| *Respondents.* | ) |
| | ) |

## PETITIONERS' OPPOSITION TO RESPONDENTS' MOTION TO DISMISS
## AND CROSS-MOTION FOR A STAY-AND-ABEY ORDER

Petitioner Ahmad Mohammad Al Darbi ("Al Darbi"), acting through his Next Friend, Ali

Mohammad Al Darbi and through undersigned counsel, opposes Respondents' Motion to

Dismiss and cross-moves for an order staying these proceedings and holding them in abeyance

pending Petitioner Al Darbi's exhaustion of his remedies under the Detainee Treatment Act of

2005, Pub. L. No. 109-148, 119 Stat. 2680 ("DTA"), and pending the Supreme Court's final

resolution of jurisdictional questions raised by the DTA and the Military Commissions Act of

2006, Pub. L. No. 109-366, 120 Stat. 2600 ("MCA").

## PRELIMINARY STATEMENT

The Supreme Court has provided guidance for the litigation involving petitioners such as

Petitioner Al Darbi, who filed his *habeas* challenge at a time when this Court had initial

jurisdiction under *Rasul v. Bush*, 542 U.S. 466 (2004), and who will soon file a petition in the

Court of Appeals under the DTA.  As a preliminary matter, and pursuant to the same Supreme

Court precedent upon which Respondents base their Motion to Dismiss, this Court retains

subject-matter jurisdiction over Petitioner Al Darbi's *habeas* action because the Circuit's split

decision in *Boumediene v. Bush*, 476 F.3d 981 (D.C. Cir. 2007) ("*Boumediene I*"), and the split

commentary by Justices of the Supreme Court in denying *certiorari*, *Boumediene v. Bush*, 127 S.

Ct. 1478 (2007) ("*Boumediene II*"), demonstrate that the Supreme Court has not foreclosed

Petitioner Al Darbi's *habeas* claims.  *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89

(1998).  This Court has authority to enter a stay-and-abey order to safeguard Petitioner Al

Darbi's *habeas* rights while he exhausts his remedies under the DTA; indeed, such an order is

mandatory in the absence of frivolous claims and intentional delay.  *See Rhines v. Weber*, 544

U.S. 269, 274 (2005).

Moreover, while the merits of Petitioner Al Darbi's *habeas* action are stayed pending

exhaustion and post-exhaustion litigation, this Court has authority to maintain the *status quo* of

the action, and the Court clearly retains supervisory authority over the protective order which

governs Petitioner Al Darbi's access to counsel.  In *Boumediene II*, Justices Stevens and

Kennedy instructed this Court to prevent any actions by Respondents that would damage

Petitioner Al Darbi's ability to exhaust his remedies under the DTA.  The dissolution of this

Court's supervisory orders would clearly prejudice Petitioner Al Darbi's ability to litigate his

claims under the DTA.

In the alternative, should this Court determine that it does not have jurisdiction over

Petitioner Al Darbi's *habeas* action, Petitioners request transfer of the action to the Court of

Appeals pursuant to 28 U.S.C. § 1631, for eventual consolidation with Petitioner Al Darbi's

petition under the DTA.

## ARGUMENT

I.    **THIS COURT RETAINS SUBJECT MATTER JURISDICTION OVER PETITIONERS' *HABEAS* ACTION AS LONG AS PETITIONERS' CLAIMS ARE NOT FRIVOLOUS AND HAVE NOT BEEN DECIDED ON THE MERITS BY THE SUPREME COURT**

This Court retains the power to decide its own jurisdiction in the first instance. *Kircher v. Putnam Funds Trust*, 126 S. Ct. 2145, 2155 (2006). While the efficacy of the DTA remedies are determined, it is premature for this Court to determine the dispositive questions, including the question of whether this Court has jurisdiction over Petitioners' *habeas* case.

Indeed, a case cited by Respondents, *see* Mot. at 4, supports this Court's retention of jurisdiction over Petitioners' *habeas* case so long as a legitimate controversy exists that has not been resolved on the merits by the Supreme Court. *See Steel Co.*, 523 U.S. at 89. Specifically, *Steel Co.* provides that a federal court's jurisdiction is not defeated by the possibility that petitioner might fail to state a federal cause of action on which petitioner could actually recover. Rather, the court maintains subject matter jurisdiction as long as there is a non-frivolous argument that the laws and Constitution support petitioners' claim:

> [T]he district court has jurisdiction if 'the right of the petitioners to recover under their complaint will be sustained if the Constitution and laws of the United States are given one construction and will be defeated if they are given another[]' . . . unless the claim 'clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous.'

*Id.* (*quoting Bell v. Hood,* 327 U.S. 678, 682-83 (1946)). Further, *Steel Co.* establishes that a Circuit Court opinion, such as *Boumediene I*, is insufficient to deprive this Court of subject matter jurisdiction over Petitioner Al Darbi's *habeas* claim. *See id.* Dismissal for lack of subject matter jurisdiction is only appropriate if the Supreme Court has ruled adversely on the merits, or where the claim is frivolous. *Id.* ("Dismissal for lack of subject matter jurisdiction because of

the inadequacy of the federal claim is proper only when the claim is 'so insubstantial, implausible, *foreclosed by prior decisions of this Court,* or otherwise completely devoid of merit as not to involve a federal controversy.") (emphasis added) (citations omitted)).

As discussed below, the dissenting opinions in *Boumediene I* and *Boumediene II* demonstrate a reading of the Constitution and the laws of the United States that would sustain Petitioner Al Darbi's *habeas corpus* petition. *See Boumediene I*, 476 F.2d at 994-1012 (Rogers, J., dissenting); *Boumediene II*, 127 S. Ct. at 1479-81 (Breyer, Souter and Ginsburg, JJ., dissenting from denial of *certiorari*). The jurisdictional issues raised in the instant case remain a subject of continuing litigation in both the Court of Appeals and the Supreme Court, as demonstrated by numerous pending motions and applications. *See* Petitioners' Notice of Filing of Pending Motions In Related Appeals Addressing The Jurisdictional Issues Raised in Respondents' Motion to Dismiss (dkt. no. 40). The Supreme Court has not decided any of the jurisdictional questions in the instant case because the denial of *certiorari* in *Boumediene II* was emphatically not a ruling on the merits. *Boumediene II*, 127 S. Ct. at 1478 (noting that "as always, denial of *certiorari* does not constitute an expression of any opinion on the merits."). Accordingly, the *Boumediene* decisions do nothing to impair Petitioner Al Darbi's rights to exhaust his remedies while this Court preserves the status quo of his *habeas* action.

## II.    THE *BOUMEDIENE* DECISIONS ESTABLISH THAT THE EXHAUSTION OF AVAILABLE REMEDIES SHOULD PRECEDE A DECISION ON THE MERITS

Respondents attempt to stretch the *Boumediene I* and *Boumediene II* decisions far beyond their reach. On February 20, 2007, a split panel of the Court of Appeals decided combined cases involving aliens detained at Guantánamo, finding that the DTA and the MCA deprived courts of jurisdiction over *habeas* actions brought by petitioners in those cases. *Boumediene I*, 476 F.3d at 981. Because the petitioners in those cases declined to seek review directly with the Circuit

Court under the DTA, the Court of Appeals found that the "only recourse" was to vacate the District Court decision and dismiss the case for lack of jurisdiction. *Id.* at 994. Indeed, the Court of Appeals expressly predicated its dismissal order on the petitioners' failure to utilize available remedies under the DTA. *Id.* This dismissal order thus does not control the instant case, because Petitioner Al Darbi will exhaust his remedies by filing in due course a petition for review under the DTA.

The *Boumediene I* petitioners filed a petition for writ of *certiorari* and, on April 2, 2007, the Supreme Court denied the petition. *See Boumediene II.* Justices Kennedy and Stevens, writing for the majority in the statement respecting denial, found that given "our practice of requiring the exhaustion of available remedies as a precondition to accepting jurisdiction over applications for the writ of habeas corpus," it was "appropriate to deny these petitions *at this time*" in order to require petitioners to exhaust their remedies under the DTA. *Id.* at 1478 (emphasis added). In requiring exhaustion, Justices Stevens and Kennedy made a telling reference to *Ex parte Hawk*, 321 U.S. 114 (1944). *See id.* The petitioner in *Hawk* filed for federal *habeas corpus* relief under circumstances, as in the present case, in which the effectiveness of other remedies had not been established. The Supreme Court not only applied the exhaustion rule but held that the adequacy of the available remedy should be decided in the first instance by "the federal district court":

> Where the state courts have considered and adjudicated the merits
> of his contentions, and this Court has either reviewed or declined
> to review the state court's decision, a federal court will not
> ordinarily reexamine upon writ of habeas corpus the questions thus
> adjudicated. But where resort to state court remedies has failed to
> afford a full and fair adjudication of the federal contentions raised,
> either because the state affords no remedy or because in the
> particular case the remedy afforded by state law proves in practice
> unavailable or seriously inadequate, a federal court should
> entertain his petition for habeas corpus, else he would be

> remediless.  In such a case he should proceed in the federal district
> court before resorting to this Court by petition for habeas corpus.

*Hawk*, 321 U.S. at 118 (internal citations omitted).  Thus, *Boumediene II* anticipates that the

ultimate questions regarding jurisdiction, which may depend in large part on the efficacy of the

DTA remedy, will first be considered and decided in the district court.  The ultimate issues will

then be preserved for appellate and Supreme Court review, if necessary.

While Respondents dismiss this process as a "speculative chain of events," Mot. at 5, in

reality it is well underway.  Not only has the Court of Appeals directed Petitioner Al Darbi and

similarly situated Guantánamo detainees to exhaust all available remedies, but five Supreme

Court Justices have made clear that, upon the exhaustion of DTA remedies, the Supreme Court

will give serious consideration to a renewed *certiorari* petition.  A majority of the Supreme

Court, in other words, has left open the possibility that it might find the Court of Appeals'

holding in *Boumediene I* erroneous and that it might therefore be appropriate to allow the *habeas*

actions of the petitioners and those similarly situated to proceed in the district courts at some

later date.

Furthermore, the jurisdictional questions regarding *habeas corpus* cannot be resolved yet

because the adequacy of the DTA remedy cannot be known until exhaustion is completed.

Questions regarding the suspension and elimination of the writ of *habeas corpus* require

consideration of whether alternative remedies provide protection coextensive with the Great

Writ.  *See Swain v. Presley,* 430 U.S. 372, 381 (1977) ("[T]he substitution of a collateral remedy

which is neither inadequate nor ineffective to test the legality of a person's detention does not

constitute a suspension of the writ of habeas corpus.").  The statement on *certiorari* in

*Boumediene II* clearly expressed, with citation to *Marino v. Ragen,* 332 U.S. 561 (1947), that if

the DTA remedy is "inadequate," the Supreme Court is prepared to address the merits of *habeas* claims brought by detainees at Guantánamo.

### III.    THE DISTRICT COURT HAS DISCRETION TO ENTER A STAY-AND-ABEY ORDER, AND SUCH ORDER IS MANDATED WHERE A PROCEDURAL BAR MAY PREVENT FURTHER *HABEAS* REVIEW

Given the need to exhaust remedies under the DTA, the instant proceedings should continue to be stayed and held in abeyance pending completion of Petitioner Al Darbi's DTA review.[1] As the Supreme Court has held, "[d]istrict courts . . . ordinarily have authority to issue stays, *see Landis v. North American Co.*, 299 U.S. 248, 254 (1936), where such a stay would be a proper exercise of discretion, *see Clinton v. Jones*, 520 U.S. 681, 706 (1997)." *Rhines*, 544 U.S. at 276. In *Rhines,* the Supreme Court explicitly approved the stay-and-abey procedure in the closely analogous context of federal *habeas corpus* proceedings. *Id.* at 278. The petitioner in *Rhines* had filed a mixed *habeas* petition in federal district court, which contained both claims exhausted through the state court system and unexhausted claims. Due to the major procedural risk that the petitioner would be deprived of a remedy in the case of dismissal, the Supreme Court found that where a *habeas* petitioner has failed to exhaust all available remedies in state court, a federal court retains discretion to keep jurisdiction over the pending *habeas* petition,

---

[1]    Respondents erroneously cite to *Ayuda v. Thornburg*, 919 F.2d 153 (D.C. Cir. 1990), for the proposition that a Court of Appeals opinion immediately becomes the law of the Circuit, and thus deprives courts of the power to stay and hold in abeyance. *See* Mot. at 3-4, n. 5. In fact, however, the majority in *Ayuda* ruled that a stay was appropriate. Respondents have improperly cited to the *concurring* opinion in that case—and, in any event, the concurring Judge in that opinion ultimately agreed with the majority in rejecting the proposition that the Court lacked power to enter a stay. *See Ayuda*, 919 F.2d at 153 (Henderson, J., concurring). Further, the other concurring opinion in that case correctly articulated the applicable law that, until the Supreme Court speaks on the issue of jurisdiction, the district court has the power to determine its own jurisdiction including "minimally, the power to maintain the status quo." *Ayuda*, 919 F.3d at 155-56 (Wald, C.J., concurring in part and dissenting in part).

staying the action and allowing exhaustion of remedies in the state courts rather than dismissing it. *Id.* at 277.

The *Rhines* Court found that if the petitioner satisfied three preconditions—all of which are met here—then "it likely would be an abuse of discretion for a court to deny a stay and dismiss." *Id.* at 278. Those preconditions are: (1) good cause for the failure to exhaust; (2) potentially meritorious unexhausted claims; and (3) no intentionally dilatory tactics by the petitioner. *Id.*; *accord Pace v. DiGuglielmo*, 544 U.S. 408, 416-17 (2005). Regarding the first precondition, Petitioner Al Darbi has good cause for his failure to exhaust until now: the DTA remedies did not exist until *after* Petitioner Al Darbi filed his *habeas* petition, and did not purport to provide the same relief to which Petitioner Al Darbi was entitled at the time the petition was filed. The questions left open by the Supreme Court's decision in *Rasul* and the subsequent enactment of the DTA and MCA have created major legal complexities, and Petitioner Al Darbi is entitled to equitable protection due to the significant confusion about his alternative legal remedies. *See Pace,* 544 U.S. at 416.[2] Second, Petitioner Al Darbi's *habeas* petition raises substantial and potentially meritorious claims. *See* Amended Petition at 16-27 (dkt. no. 8). Finally, Petitioner Al Darbi has not engaged in dilatory litigation tactics. On the contrary, Petitioner Al Darbi has been diligent in presenting his claims and attempting to obtain relief since filing his *habeas* petition in December 2005, notwithstanding the significant changes

---

[2]        Respondents argue that Petitioners could have filed a petition under the DTA at any time after the DTA's enactment. Mot. at 7. This argument is disingenuous. Petitioners had no reason to believe that the *habeas* petition would be dismissed and that an alternate remedy would be necessary. Petitioners understandably took guidance from the Supreme Court's decision in *Hamdan v. Rumsfeld*, 126 S. Ct. 2749, 2764 (2006), that the DTA had no impact on Petitioners' petition. Moreover, had Petitioners concurrently filed a *habeas* petition and a petition for review under the DTA, one petition arguably could have prejudiced the other.

to the procedures and remedies available to him and Respondents' numerous attempts to stay or dismiss his *habeas* petition.

Respondents improperly attempt to limit the holding of *Rhines*, arguing that *Rhines* only authorizes the district court to stay-and-abey in those instances where failure to do so would create a temporal bar to a *habeas* petition. *See* Mot. at 6-7. Nothing in *Rhines* supports such limitation of the district court's equitable power to concerns regarding statutes of limitations. To the contrary, *Rhines* held that the equitable powers that the district court possessed before enactment of the statute of limitations continued to exist and were not extinguished by the statute. 544 U.S. at 276. Accordingly, the Court in *Rhines* determined that the concern warranting a stay-and-abey order was the need to protect petitioner from impairment to his future exercise of *habeas corpus* rights. *See also Omar v. Harvey*, 479 F.3d 1 (D.C. Cir. 2007) (affirming district court's preliminary injunction barring transfer of prisoner, entered to preserve jurisdiction over *habeas* petition of American citizen detained in military facility in Iraq).

## IV. THE DISTRICT COURT SHOULD PRESERVE THE STATUS QUO WHILE JURISDICTIONAL QUESTIONS ARE LITIGATED, TO GUARD AGAINST PREJUDICE TO PETITIONERS

In their statement accompanying *Boumediene II*, Justices Stevens and Kennedy wrote: "Were the Government to take additional steps to prejudice the position of petitioners in seeking review in this Court, 'courts of competent jurisdiction,' including this Court, 'should act promptly to ensure that the office and purposes of the writ of habeas corpus are not compromised.'" 127 S. Ct. at 1478. This language echoes the long-established principle that, even if there may be no jurisdiction over a claim, the ultimate question is for the Supreme Court, and while the matter is under consideration, the courts have "authority, from the necessity of the case, to make orders preserving the existing conditions and the subject of the petition." *United Mine Workers*, 330 U.S. at 291 (quoting *United States v. Shipp*, 203 U.S. 563, 573 (1906)); *see*

*also In re President and Dirs. of Georgetown Coll.*, 331 F.2d at 1005 (quoting *Shipp* and *United Mine Workers* and finding that "[c]learly there was 'power to preserve existing conditions while . . . determining (the) authority to grant injunctive relief'").  This Court clearly has the power to preserve the status quo of Petitioners' *habeas* case.  Indeed, established precedent makes clear that this Court would maintain supervisory authority over the Amended Protective Order (dkt. no. 12) even if the case were dismissed.

      **A.**        **This Court Preserves Jurisdiction Over The Amended Protective Order**

      Respondents incorrectly argue that dismissal of this case would automatically result in the dissolution of the Amended Protective Order entered by this Court.  *See* Mot. at 10 (suggesting that "prompt dismissal of these cases . . . would bring this Court's counsel access regime to an end").  Contrary to Respondents' assertion, this Court has recognized that the Amended Protective Order, like all protective orders directed to future events, survives dismissal of this case and may be modified, enforced or dissolved only by separate order of the Court.  *See Adem v. Bush*, 425 F. Supp. 2d 7, 20 (D.D.C. 2006) (noting that "[i]t would be untenable for the District Court to be put in a position where it is powerless to enforce its own protective order, presently in effect and over which it has continuing control"); *see also Gambale v. Deutsche Bank AG*, 377 F.3d 133, 140-41 (2d Cir. 2004) ("The court's supervisory power does not disappear because jurisdiction over the relevant controversy has been lost."); *Poliquin v. Garden Way, Inc.*, 989 F.2d 527, 535 (1st Cir. 1993) (citation omitted) ("[A] protective order, like any ongoing injunction, is always subject to the inherent power of the district court to relax or terminate the order, even after judgment.").  Indeed, this Court expressly "retain[ed] continuing jurisdiction to enforce or modify the terms of [the Amended Protective] Order."  *In re Guantanamo Detainee Cases*, 344 F. Supp. 2d 174, 176 (D.D.C. 2004).

Respondents are aware of these precedents, and even cite to some of them in their Motion. *See* Mot. at 8-9, n.15. Yet, Respondents mistakenly interpret these precedents to mean only that "certain requirements of this Court's Protective Order, *i.e.*, requirements pertaining to the handling of classified and 'protected' information appropriately, retain vitality beyond the required dismissal of these cases." *Id.* In other words, Respondents contend that only those provisions of the Court's protective orders that Respondents like (*i.e.*, those provisions that constrain Petitioners' counsel) survive dismissal, while the provisions that Respondents do not like (*i.e.*, those provisions that constrain Respondents' counsel and the Government) do not. Respondents cite no authority, and Petitioners are aware of none, that supports this cherry-picking approach. *Cf. SRS Techs., Inc. v. Physitron, Inc.*, 216 F.R.D. 525, 526 (N.D. Ala. 2003) (rejecting plaintiff's assertion that, under protective order in effect after settlement of underlying lawsuit, plaintiff "should now be allowed virtually unrestricted access to and use of confidential documents produced by the Defendants, but that the protective order should remain in full force to protect Plaintiff's documents"). The cases cited above show that the Amended Protective Order entered by the Court would survive dismissal in its entirety, unless and until it is modified by a separate order of this Court.

If Respondents wish to modify the Amended Protective Order, they must submit a separate motion, properly supported by legal authority and evidentiary submissions, demonstrating why the Order, should be altered. *See, e.g., SRS Techs.*, 216 F.R.D. at 529-31; *Lee Shuknecht & Sons v. P. Vigneri & Sons, Inc.*, 927 F. Supp. 610, 614-16 (W.D.N.Y. 1996). This is so even where, as here, intervening legislation may have affected the Court's jurisdiction. *See Miller v. French*, 530 U.S. 327, 345-48 (2000). If appropriate, the Court should then hold an evidentiary hearing at which Respondents and Petitioners are heard. *See Hodge v. Dep't of*

*Hous. and Urban Dev.*, 862 F.2d 859, 861 (11th Cir. 1989).  Respondents have not moved to modify the Amended Protective Order in this case, and the Court has not held an evidentiary hearing on this issue.[3]  Therefore, to the extent Respondents seek by their motion to dismiss to dissolve the Amended Protective Order, the motion should be denied as premature.

**B.    Maintenance Of The Amended Protective Order Is Critical For The Protection Of Petitioner Al Darbi's Rights**

Moreover, dissolution of the Amended Protective Order would constitute exactly the type of prejudice to Petitioners' ability to litigate that Justices Kennedy and Stevens instructed the courts to guard against.  *See Boumediene II*, 127 S. Ct. at 1478.  Maintenance of the Amended Protective Order, and the client access provided therein, is essential for Petitioner Al Darbi's effective exhaustion of his remedies under the DTA.  Without the Amended Protective Order, there would be no legal mail channel between Petitioner Al Darbi and undersigned counsel, there would be no attorney-client privileged communications, counsel's client visits to Guantánamo would be curtailed or eliminated, and the Court Security Officer would have to destroy the classified documents that shed the only insight to date upon the factual bases for Petitioner Al Darbi's detention.  Under such conditions, counsel will be unable to provide the Court of Appeals with sufficient factual information to make a balanced and informed decision regarding the merits of Petitioner Al Darbi's claims under the DTA.

Conversely, staying and abeying this case will work no prejudice on Respondents, and will save Petitioners the uncertainty accompanying attempts to "resurrect" dismissed *habeas*

---

[3]     Respondents also suggest that the Amended Protective Order should be renegotiated and replaced in the future DTA proceedings in the Court of Appeals.  *See* Mot. at 9-11.  If Respondents have concerns about the Amended Protective Order, that Order provides powerful mechanisms for the resolution of disputes between the parties, up to and including contempt and criminal prosecution.  As described above, however, Respondents have failed to exhaust any of these remedies.  Respondents' wish for a new, more restrictive protective order cannot justify dismissal of this *habeas* action.

claims following exhaustion of his DTA remedies.  Petitioners are concerned, for example, that if the Court dismisses this *habeas* petition, Respondents will argue in later court hearings that Petitioners may seek review only of the Court of Appeals' DTA determinations.  The DTA, in turn, allows challenges only to specified aspects of final decisions of the Combatant Status Review Tribunals ("CSRTs").  Further, because there is a reasonable possibility that the Supreme Court will, in the near future, find the jurisdictional holding in *Boumediene I* to be in error, ordering dismissal of this case now could cause unnecessary additional delay that is contrary to the nature of *habeas* relief.  *See Carafas v. La Vallee*, 391 U.S. 234, 238 (1968) (*habeas* writ, "shaped to guarantee the most fundamental of all rights, is to provide an effective and speedy instrument by which judicial inquiry may be had into the legality of the detention of a person").  Under these circumstances, the most equitable, economical and efficient way to proceed is for this Court to stay rather than dismiss this action pending a final determination of the issues unresolved by *Boumediene I.*   This Court should carefully protect the status quo by maintaining the orders entered to date to ensure that Petitioner Al Darbi is not prejudiced in his ability to litigate the DTA action, and to preserve potential remedies in this Court and on appeal.

**V.    IN THE EVENT THE COURT DETERMINES THAT IT LACKS JURISDICTION, IT SHOULD TRANSFER PETITIONERS' CASE TO THE COURT OF APPEALS PURSUANT TO 28 U.S.C. § 1631**

If the Court nevertheless finds that it lacks jurisdiction to hear this case, and declines to enter the requested stay-and-abey order, then the Court should transfer Petitioners' *habeas* action to the Court of Appeals for eventual consolidation with Petitioner Al Darbi's petition for review under the DTA.  The transfer statute provides, in relevant part:

> Whenever a civil action is filed in a court . . . or appeal . . . is noticed or filed with such a court and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such jurisdiction or appeal to any other such court in which the action or appeal could have been brought at the time it

> was filed or noticed, and the action or appeal shall proceed as if it
> had been filed in or noticed for the court to which it is transferred
> on the date upon which it was actually filed in or noticed for the
> court from which it was transferred.

28 U.S.C. § 1631.  Under the circumstances, including the uncertain and shifting scope of federal

court jurisdiction, this Court should—at a minimum—ensure that there is no gap in the

governing procedures until the Court of Appeals can fully consider these matters.

## <u>CONCLUSION</u>

Petitioner Al Darbi's *habeas* rights are far from decided.  The jurisdictional issues raised

by Respondents' Motion to Dismiss remain the subject of ongoing litigation in the Court of

Appeals and the Supreme Court, and the Supreme Court has not yet ruled on the merits.

Moreover, Petitioner Al Darbi has not received a hearing on the facts and legal arguments of his

individual case.  Respondents' Motion prejudges Petitioners' claims and improperly seeks to

destroy this Court's carefully crafted measures that protect Petitioner Al Darbi's access to

counsel.  Under governing Supreme Court precedent, this Court should preserve the status quo

by staying and abeying these proceedings pending the resolution of the jurisdictional issues in

this case and Petitioner Al Darbi's exhaustion of his remedies under the DTA.  In the alternative,

if this Court finds that it lacks jurisdiction, it should transfer this case to the Court of Appeals.

For the foregoing reasons, Petitioners respectfully request that this Court deny

Respondents' Motion to Dismiss and grant Petitioners' cross-motion for a stay-and-abey order.

Dated:  May 3, 2007

Respectfully submitted,

SIMPSON THACHER & BARTLETT LLP

/s/ Paul C. Curnin
Paul C. Curnin
Veronica Vela
Karen E. Abravanel
425 Lexington Avenue
New York, New York 10017
(212) 455-2000

Attorneys for Petitioners


*Of Counsel*:

J. Wells Dixon
Gitanjali S. Gutierrez
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, New York 10012
Tel: (212) 614-6439
Fax: (212) 614-6499